GEORGE S. MAUERMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mauerman v. Commissioner
Docket No. 3007-90
United States Tax Court
T.C. Memo 1993-23; 1993 Tax Ct. Memo LEXIS 21; 65 T.C.M. (CCH) 1772; January 19, 1993, Filed *21 Decision will be entered for respondent as to 1984 and 1986, and for petitioner as to 1985. Petitioner made payments to Pre-Paid Legal Services, Inc. (Pre-Paid), to buy the right to receive 5 years' premium income on legal service contracts issued by Pre-Paid to clients in 1984 and 1986. Petitioner deducted the payments to Pre-Paid on his 1984 and 1986 tax returns. Petitioner should have amortized the payments over 5 years. Petitioner and respondent have settled the deficiencies; the dispute is whether petitioner is liable for additions to tax for 1984 under sec. 6661(a), I.R.C. 1954, and for 1986 under sec. 6661(a), I.R.C. 1986. 1. Held: Petitioner did not have substantial authority for the position taken on his tax returns. 2. Held, further: Petitioner did not adequately disclose his position on his tax returns. 3. Held, further: Respondent did not abuse her discretion in failing to waive the additions to tax. 4. Held, further: Imposition of additions to tax does not violate petitioner's constitutional rights to due process and equal protection. 5. Held, further: Petitioner is liable for additions to tax for 1984 under sec. 6661(a), I.R.C. *22 1954, and for 1986 under sec. 6661(a), I.R.C. 1986. For Petitioner: William E. Farrior. For Respondent: Donald E. Edwards and Nancy S. Vozar. CHABOT
CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined additions to tax for 1984, 1985, [1] and 1986 under section 6661(a) (substantial understatement of liability) against petitioner as follows: Additions to Tax
Year
Sec. 6661(a)
1984
$ 11,160
1985
1,634
1986
10,401
*23 The addition to tax under section 6661(a) for 1984 was determined by respondent as 25 percent of the $ 44,638 underpayment for that year. The addition to tax under section 6661(a) for 1986 was determined by respondent as 25 percent of the $ 41,603 underpayment for that year. After concessions by respondent, supra note 1, the issue for decision is whether petitioner is liable for the additions to tax under section 6661(a) for 1984 and 1986. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioner resided in Oklahoma. Petitioner obtained an undergraduate degree from Vanderbilt University in 1959 and a medical degree from Columbia Medical School in 1963. Petitioner stayed at Columbia Medical School until 1965 and then spent 2 years in military service, until 1967. From 1967 to 1970, petitioner participated in an orthopedic fellowship in Memphis, Tennessee. Since 1970 petitioner has practiced orthopedic surgery and sports medicine in Tulsa, Oklahoma. He is part of a group of eight orthopedic surgeons and two sports medicine *24 doctors. The predominant source of petitioner's gross income for the years in issue was wages and salaries. On his 1984 tax return petitioner showed his occupation as "Surgeon". Petitioner had investments in stock, and investments through partnerships and corporations. Petitioner does not have any legal, tax, or insurance expertise. Petitioner's occupation as a physician is his only occupation. Petitioner has never been in the insurance business. Petitioner reported on his 1984, 1985, and 1986 tax returns the items of gross income shown in table 1. Table 1 Item
1984
1985
1986
Wages, salaries
$ 280,036.00 $ 294,261.00 $ 252,432.00 Interest income
2,322.60 10,217.67 32,949.90 Dividends
8,659.84 5,072.34 672.65 Insurance, reinsurance [1] *25 45,018.00 105,000.00 105,000.00 Capital gains (losses) [2]
6,373.00 (189,210.84)
84,231.00 Form 4797
--   (79,102.98)
--   Rents [1]
1,795.25 3,145.00 252.10 Royalties
12,653.12 10,335.00 8,230.42 Partnerships
(3,069.59)
(1,380.21)
(1,143.00)
Subchapter S
(1,906.92)
247.96 (249.14)
Other
300.00 528.00 29.00
Table 2 shows the adjustments, to which petitioner agreed, that led to the understatements of income tax on which the section 6661 additions to tax are based. Table 2 Item
1984
1985
1986
Schedule C net income
$ 106,138 ($ 915)
$ 88,017
Depreciation -- rental
(14,251)
14,251
--
(see supra note 1)
Total agreed adjustments
91,887 13,336
88,017
The understatements on which the section 6661 additions are based are due to petitioner's deductions of payments to Pre-Paid Legal Services, Inc. (hereinafter sometimes referred to as Pre-Paid), [2] which payments should have been capitalized. *26 Pre-Paid began business in 1973 and was one of the first companies of its type to provide prepaid legal service benefits. Pre-Paid's primary business was the issuance of legal service contracts to its individual members in return for monthly premiums. The legal service contract sold by Pre-Paid provided for the payment of specified legal fees incurred by the individual member. By 1984, Pre-Paid was marketing legal service contracts in 22 States and was a publicly held company listed on the NASDAQ National Market System. Pre-Paid also began a program whereby an individual could become a reinsurer. Reinsurance is a common business practice for many insurance companies. Basically, it is a contract whereby risk is transferred between two parties. The parties to the contract are the ceding company (reinsured) which wrote the original policy, and the assuming party (reinsurer) which pays a ceding commission and accepts the business risks and rewards of the insurance (claims and premium income). In indemnity reinsurance, liability remains the direct responsibility of the ceding company and the policyholder is not notified of the reinsurance transaction. Pre-Paid established a pooling *27 agreement which all of the investors and reinsurers were obliged to sign whereby each individual participant in this reinsurance program pooled his contracts that he had purchased into one large pool to be managed and overseen by L.N. Fentem Management Co. (hereinafter sometimes referred to as Fentem Management), where Fentem Management would administer, report, and distribute claims experience among the individual reinsurers. Petitioner became aware of Pre-Paid in about 1976 or 1977 through an attorney who was a patient of petitioner. Petitioner bought stock in Pre-Paid in 1977, and continued to buy stock for himself and his family through 1986. During this time, petitioner invested more than half a million dollars in Pre-Paid stock. In 1983 petitioner learned about Pre-Paid's reinsurance program. Before deciding to become involved with the reinsurance program, petitioner confirmed that Harland Stonecipher (hereinafter sometimes referred to as Stonecipher), Pre-Paid's president, Rick Haney (hereinafter sometimes referred to as Haney), Pre-Paid's vice president, and Frank Jaques (hereinafter sometimes referred to as Jaques) were putting their own money into Pre-Paid's reinsurance *28 program. Jaques led petitioner to believe that this type of reinsurance program "had already been cleared through the courts" and was "all up-and-up". Petitioner knew that Jaques had the second largest shareholdings in Pre-Paid at that time, that Jaques was legal counsel for Pre-Paid, and that Jaques was on the board of directors of Pre-Paid. Petitioner was told that Fentem Management had researched the reinsurance program, and that an accounting firm, Fentem, Quinten & Thomas, Inc. (hereinafter sometimes referred to as Fentem CPAs), was also involved in the reinsurance program. Jaques, Fentem Management, and Fentem CPAs told petitioner that the payments were currently deductible. Petitioner made payments to Pre-Paid as investments in the reinsurance program in 1983, 1984, and 1986; he did not make such payments in 1985 because he did not have enough free cash. In December 1984, petitioner entered into a written contract with Pre-Paid. By the terms of the contract, petitioner would make cash payments to Pre-Paid and indemnify Pre-Paid for administrative expenses and claims under certain prepaid legal insurance contracts issued by Pre-Paid. The contract provides that From *29 January 1, 1985 through December 31, 1989, Principal [petitioner] will receive all premium income from such memberships [in effect, insurance contracts] subject to the following expenses which will be paid Agent [Pre-Paid] solely from the premium income collected by Agent [Pre-Paid] on behalf of Principal * * *.
Pre-Paid also agreed to administer the memberships for an administrative fee not to exceed 30 percent of the gross premium income. Pre-Paid guaranteed a certain amount of gross premium income each year to petitioner, and agreed to replace canceled memberships subject to the payment of a replacement fee. The transaction provided Pre-Paid with additional cash reserves to be used in the expansion of its business. Petitioner entered into similar contracts with Pre-Paid in 1983 and 1986. The 1983 transaction generated $ 45,000 in gross premiums for 1984, which was reported on Schedule C of petitioner's 1984 tax return. Petitioner also entered into an agreement (effective January 1, 1984) with Fentem Management. The agreement provides that all revenues and operating expenses attributable to the reinsurance program pooling agreements are to be pooled and any profits or *30 losses are to be distributed. Pursuant to the agreement, Fentem Management would hire C.P.A.'s and attorneys to perform accounting and legal services that would be needed to manage the reinsurance program. Petitioner received a letter regarding the reinsurance transaction, dated February 28, 1985, from Fentem CPA's stating that "It is our opinion that each individual should report their income and expenses on Schedule 'C' of the 1040". The letter also states: "However, this may not be the correct method for all investors and we suggest that they contact with [sic] their own accountant or tax preparer for the method most suitable to their situation." Petitioner received a copy of a letter dated March 6, 1985, to Fentem Management from Jaques, who was also the attorney for Fentem Management, stating that "all activities of the pool, [Pre-Paid], and [Fentem Management] during the year 1984 have been legal and proper". Neither of the above-mentioned letters cites any legal authority. Since about 1970, petitioner had used Don Atkins, an attorney and C.P.A., to prepare or review petitioner's tax returns. Don Atkins prepared petitioner's tax returns for the years in issue. Don Atkins' *31 son, Blake Atkins, did the primary work in preparing these tax returns; Blake Atkins did so as Don Atkins' employee. Blake Atkins has a degree in accounting from Wake Forest University, and a law degree from the University of Tulsa. Blake Atkins began practicing tax and corporate law in 1981. Neither Don Atkins nor Blake Atkins was an investor in or officer of Pre-Paid. When Blake Atkins received information from petitioner for preparation of petitioner's 1983 tax return, [3]Blake Atkins was not aware of what the reinsurance transaction was. Blake Atkins called petitioner for more information. Petitioner briefly reviewed the reinsurance program, and directed Blake Atkins to call Fentem CPAs to see if the reinsurance program "was on the up-and-up". Blake Atkins discussed the reinsurance program over the telephone with an accountant from Fentem CPAs. Fentem Management sent to Blake Atkins the material which had been prepared by Jaques. Blake Atkins reviewed the information, but he did not do any independent research. Blake Atkins confirmed some of the information by looking at the Internal Revenue Code and the Treasury regulations. Blake Atkins read the synopses of cases *32 sent to him from Fentem Management, but he did not read the case opinions. Blake Atkins noted that appellate courts were not in agreement as to whether these types of payments were currently deductible or whether they should be amortized, but he decided there were "sufficient grounds" that the payments were currently deductible. Blake Atkins did not do any legal research other than to verify the information which was sent to him by Fentem Management. Blake Atkins knew that Jaques' holdings in Pre-Paid were the second largest, that Jaques was an officer in Pre-Paid, and that Jaques was legal counsel for Pre-Paid. Blake Atkins did not explain to petitioner the legal basis for treating the payments as currently deductible, nor did he explain to petitioner that appellate courts disagreed about the proper tax treatment. In regard to the reinsurance program, petitioner relied both on the advice of his attorneys, Don Atkins and Blake Atkins, and on Fentem Management and Jaques. Petitioner knew that Don Atkins and Blake Atkins were advising him based on information provided to them by Jaques and Fentem Management. *33 Petitioner deducted the payments to Pre-Paid in the year paid. On his 1984 tax return, petitioner reported the reinsurance program on Schedule C. Petitioner listed total deductions of $ 142,937.40 from this program. The total deductions were broken down into different categories as follows: $ 105,256.38 as "Commissions", $ 9,417.50 as "Interest on business indebtedness", $ 4,500 as "Legal and professional services", $ 10,129.02 as "General Administrative", $ 13,544.48 as "Claims", and $ 90.02 of "Bank Charge". The parties have stipulated that the relevant deductions are all of these items except for the $ 90.02 "Bank Charge". See supra note 2. On his 1984 Schedule C petitioner reported $ 45,018 of "Premium Income". For 1984, on the line preprinted "Main business activity" of Schedule C, petitioner listed "Prepaid Reinsurance Pool-1983 and 1984". Petitioner attached Form 8271 to his 1984 income tax return. This form is captioned "Investor Reporting of Tax Shelter Registration Number". On part I of this form petitioner listed the tax shelter name as "Prepaid Insurance Pool". On part II of this form, petitioner indicated that the "tax shelter benefits" he was claiming *34 were deductions of $ 94,500 on Schedule C. On his 1986 tax return, petitioner again reported the reinsurance program on Schedule C. Petitioner listed total deductions of $ 196,259.26 from this program. The total deductions were broken down into different categories as follows: $ 124,627.08 as "Commissions", $ 8,017.37 as "Other interest" (i.e., other than mortgage interest paid to financial institutions), $ 40,047.49 as "Claims", and $ 23,567.32 as "Administration". On his Schedule C petitioner reported $ 105,000 of "Premium Income" on Schedule C. On the line preprinted "Principal business or profession" of Schedule C, petitioner listed "Reinsurance". Petitioner's tax return explanation of his insurance activities appears only on Schedule C (and, for 1984, Form 8271); no attachment to his 1984 or 1986 tax returns deals with this matter. On his 1985 tax return Schedule C, petitioner reported $ 105,000 premium income and $ 111,212.78 deductions, for a net loss of $ 6,212.78. Respondent disallowed petitioner's claimed deductions for his payments to Pre-Paid on petitioner's 1984 and 1986 tax returns. The dispute was settled by allowing the payments in both 1984 and 1986 to be *35 amortized over the 5-year terms of the contracts. On his 1984 tax return, petitioner shows a tax liability of $ 28,628.71; his correct liability is $ 73,267. On his 1986 tax return, petitioner shows a tax liability of $ 15,123.05; his correct liability is $ 56,726. Petitioner asked respondent to waive all or part of the substantial understatement additions to tax pursuant to section 6661(c) for 1984 and 1986. Respondent refused to waive any of the substantial understatement additions to tax. The issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies was not the primary and predominant business activity of petitioner during either 1984 or 1986. The relevant facts affecting the tax treatment of the payments are not adequately disclosed in petitioner's tax returns for 1984 and 1986. Respondent's refusal to waive the additions to tax was not an abuse of discretion. OPINION Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment attributable to a substantial understatement of tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement *36 is substantial if it exceeds the greater of 10 percent of the correct tax or $ 5,000. Sec. 6661(b)(1)(A). (Our findings of fact make it clear that petitioner has substantial understatements for both years before us.) If an item is not attributable to a tax shelter (see supra note 1), then the understatement shall be reduced on account of the item, and the addition to tax accordingly reduced, if (1) the taxpayer's treatment of the item was based on substantial authority, or (2) the taxpayer adequately disclosed on the tax return or in a statement attached to the tax return the relevant facts affecting the item's tax treatment. Sec. 6661(b)(2)(B); [4]Accardo v. Commissioner, 942 F.2d 444, 453 (7th Cir. 1991), affg. 94 T.C. 96 (1990). *37 Respondent has authority to waive all or any part of this addition to tax, under circumstances specified in the statute. Sec. 6661(c). We consider first, whether petitioner had substantial authority for the positions taken on his tax returns; second, whether there was adequate disclosure of relevant facts on petitioner's tax returns; third, whether respondent abused her discretion in not waiving the section 6661 additions; and fourth, whether application of the 25-percent section 6661 additions violates petitioner's constitutional due process and equal protection rights. I. Substantial Authority
Petitioner contends that he had substantial authority for the position taken on his tax returns that the payments to Pre-Paid were currently deductible. Petitioner's analysis is that (1) ceding commissions in a reinsurance setting are currently deductible for life insurance companies, sec. 809(c)(1), and for casualty and other insurance companies, sec. 832(c); (2) ceding commissions in a reinsurance setting are functionally equivalent to agent's commissions for primary insurance, and such agent's commissions are currently deductible; and (3) "Since Pre-Paid * * * was operated through *38 its subsidiary, Pre-Paid Legal Casualty, Inc., as an insurance company in the State of Oklahoma, the Petitioner, as a reinsurer, believed that he was entitled to the same treatment afforded insurance companies, i.e., the current deductibility of ceding commissions in a reinsurance transaction." Respondent contends that petitioner did not have substantial authority to support his position taken on his 1984 and 1986 tax returns that the insurance commissions were currently deductible. Respondent contends that only insurance companies may currently deduct ceding commissions pursuant to the provisions of subchapter L (sections 801 through 844). Respondent contends that petitioner has not established that he qualifies as an insurance company for purposes of subchapter L. We agree with respondent. Firstly, we consider what constitutes substantial authority for purposes of section 6661(b)(2)(B)(i). Secondly, we examine what authorities petitioner relied upon and determine if they constitute substantial authority. There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of *39 authorities supporting contrary positions. Accardo v. Commissioner, 942 F.2d at 453; Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), affg. 91 T.C. 686 (1988); Schirmer v. Commissioner, 89 T.C. 277, 283 (1987); sec. 1.6661-3(b), Income Tax Regs.[5]
*40 All authorities relevant to the tax treatment of an item, including contrary authorities, are taken into account in determining whether substantial authority exists and the weight of those authorities is determined in light of the pertinent facts and circumstances. Sec. 1.6661-3(b)(1), Income Tax Regs.
In determining whether there is substantial authority for a taxpayer's position, the following authorities are considered: applicable provisions of the Internal Revenue Code and other statutory provisions; temporary and final regulations construing such statutes; court cases; administrative pronouncements (including revenue rulings and revenue procedures); tax treaties and regulations thereunder, and Treasury Department and other official explanations of such treaties; and Congressional intent as reflected in committee reports, joint explanatory statements of managers included in conference committee reports, and floor statements made prior to enactment by one of a bill's managers. * * *
Antonides v. Commissioner, 91 T.C. at 702; Schirmer v. Commissioner, 89 T.C. at 284; sec. 1.6661-3(b)(2), Income Tax Regs. *41 The weight of the authorities for the tax treatment of an item is determined by the same analysis that a court would follow in evaluating the treatment of the item. Thus, if an authority is materially distinguishable on its facts from the facts of the case at issue, then the authority is of little relevance. Antonides v. Commissioner, 91 T.C. at 702-703, affd. 893 F.2d at 660; sec. 1.6661-3(b)(3), Income Tax Regs.
The taxpayer's belief that the authorities regarding the tax treatment of an item constitute substantial authority is not to be taken into account in determining whether there is substantial authority. Schirmer v. Commissioner, 89 T.C. at 284; sec. 1.6661-3(b)(1), Income Tax Regs.
Petitioner directs our attention to Okla. Stat. tit. 36 sections 103 and 104 (1980), contending that a natural person could be an "insurer" in the years in issue. Petitioner contends that since the Oklahoma statute provides that an individual may be an insurer for the purposes of the State statute, then it follows that the individual may be an insurance company for purposes of the Federal statute. *42 Petitioner states that Substantial authority can be found for the Petitioner's position in Sections 832(c), 809(c)(1), 809(d)(12)[,] and 162, Treas. Reg. §§ 1.809-5(a)(7)(ii) and 4(a)(1)(iii), Rev. Rul. 70-552, and the Tax Court decisions in Stern [v. Commissioner, 66 T.C. 91 (1976),] and Beneficial Life [Insurance Co. v. Commissioner, 79 T.C. 627 (1982)], supra.
The difficulties with petitioner's claimed "substantial authority" are that (1) State labels do not control, (2) the claimed Federal tax treatment is available only to an "insurance company", (3) petitioner was not an insurance company, and (4) petitioner does not point us to any "substantial authority" that suggests petitioner might have been an insurance company. Although State law creates legal interests and rights, the Federal revenue acts designate how the interests or rights so created shall be taxed. United States v. Mitchell, 403 U.S. 190, 197 (1971), and cases there cited. Once rights are obtained under State law, whatever they are called, these rights are subject *43 to the Federal definition of taxability. Helvering v. Stuart, 317 U.S. 154, 162 (1942). If an interest or right created by State law is intended by the Congress to be taxed, then the Federal law prevails no matter what name is given to the interest or right by State law. Morgan v. Commissioner, 309 U.S. 78, 81 (1940). In interpreting the words used in a Federal revenue act, State law is not controlling unless the Federal statute "by express language or necessary implication, makes its own operation dependent upon state law." Heiner v. Mellon, 304 U.S. 271, 279 (1938); Burnet v. Harmel, 287 U.S. 103, 110 (1932). It does not appear (and petitioner has not asserted) that the Federal statute is dependent on the Oklahoma law. Thus, even if Oklahoma permits petitioner to conduct insurance or reinsurance activities as an individual, that does not control whether petitioner is an insurance company under Federal law. Section 832(c) allows certain deductions "In computing the taxable income of an insurance company subject to the tax imposed by section 831". Section *44 831(a) provides the general rule that taxes are to be "computed as provided in section 11". Section 11 imposes income taxes on corporations. Petitioner does not contend that he should be taxes as a corporation. In his tax returns for 1984 and 1986, and in the settlement of adjustments, petitioner has proceeded on the basis that he is to be taxed as an individual and not as a corporation. The definition of insurance company that applies to the years in issue [6] is in section 1.801-3(a)(1), Income Tax Regs., which provides as follows: § 1.801-3. Definitions. * * * (a) Insurance company. (1) The term "insurance company" means a company whose primary and predominant business activity during the taxable year is the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies. Thus, though its name, charter powers, and subjection to State insurance laws are significant in determining the business which a company is authorized and intends to carry on, it is the character of the business actually done in the taxable year which determines whether a company is taxable as an insurance company under the Internal Revenue Code.
*45 Also, sections 809(c)(1) and 809(d)(12), sections 1.809-5(a)(7)(iii) and 1.809-4(a)(1)(iii), Income Tax Regs., and Rev. Rul. 70-552, 1970-2 C.B. 141, all depend on petitioner's being entitled to be treated as an insurance company, as defined in section 1.801-3(a)(1), Income Tax Regs.
Petitioner's occupation during the years in issue was orthopedic surgeon. As shown in table 1, supra, the predominant source of petitioner's gross income for the years in issue was wages and salaries. Petitioner testified that his only occupation during 1984 and 1986 was surgeon. Petitioner's 1984 tax return shows his occupation as "Surgeon". We conclude (and we have found) that the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies was not the primary and predominant business activity of petitioner during either 1984 or 1986. We conclude that the cited Internal Revenue Code provisions, regulations, revenue ruling, and the Oklahoma statute provide no support for the proposition that petitioner qualifies as an "insurance company" under the regulations, nor do they support the proposition that petitioner *46 is entitled to the claimed current deductions even though petitioner is not an insurance company. Petitioner also cites as substantial authority for his position two law review articles [7] that were written in 1983 and 1984 on the deductibility of reinsurance ceding commissions by insurance companies. Conclusions reached in treatises and legal periodicals are not authority for purposes of determining substantial authority. However, the authorities underlying the conclusions, where applicable to the facts of a particular case, may constitute substantial authority for the tax treatment of an item. Sec. 1.6661-3(b)(2), Income Tax Regs.
Petitioner asserts that each of the cited articles indicates that this Court's opinion in Beneficial Life Insurance Co. v. Commissioner, 79 T.C. 627 (1982), *47 supports the immediate deductibility of ceding commissions. Petitioner asserts that one of the articles refers to a 1961 technical advice memorandum which "held that the commission expenses incurred in securing multiple year policies were 'deductible in full in the taxable year in which the contract became effective.'" However, the taxpayer in Beneficial Life clearly was an insurance company, and there is no indication that the taxpayer referred to in the technical advice memorandum was not an insurance company. Further, petitioner does not suggest that either Beneficial Life or the technical advice memorandum indicates that an individual in petitioner's circumstances could qualify as an insurance company, or that such an individual could be entitled to the claimed tax treatment even if that individual were not an insurance company. Accordingly, we hold that the law review articles are not substantial authority for the position that petitioner is entitled to currently deduct the payments. Petitioner cites Stern v. Commissioner, 66 T.C. 91 (1976), in which the taxpayers were individuals. However, in Stern7 the deductions on account of *48 ceding commissions were allowable to a corporation which clearly was an insurance company. The individual taxpayers sought to obtain the benefits of those deductions because the insurance company was a "subchapter S corporation" and the taxpayers were the shareholders thereof. In the instant case, petitioner operated the activity as a Schedule C business. Stern is not authority for petitioner's being able to currently deduct the payments. Petitioners also direct our attention to the Court of Appeals' opinion in Merit Life Ins. Co. v. Commissioner, 853 F.2d 1435 (7th Cir. 1988), affg. T.C. Memo. 1986-480. It is not clear to us what the point is of this reference, because: (1) the Court of Appeals' opinion in Merit Life was issued after petitioner took his positions on his tax returns and so it could not have been a factor in substantial authority under section 1.6661-3(b)(4)(iii), Income Tax Regs. (see supra note 5), (2) Merit Life was disapproved by the Supreme Court the next year, Colonial Am. Life Ins. Co. v. Commissioner, 491 U.S. 244 (1989), and the Court of Appeals' decision *49 in Merit Life was vacated by the Supreme Court, Commissioner v. Merit Life Ins. Co., 492 U.S. 902 (1989); and (3) Merit Life was an interpretation of section 809(c) as applied to what clearly was an insurance company and so, even before the Supreme Court's opinion, Merit Life provided no authority for the proposition that petitioner was entitled to currently deduct all of the payments. We conclude that petitioner did not have substantial authority for his position that the payments were currently deductible. We hold for respondent on this issue. II. Adequate Disclosure
Petitioner contends that he adequately disclosed on the Schedules C of the tax returns his position regarding the current deductibility of the payments to Pre-Paid. Respondent contends that petitioner did not adequately disclose his position on his tax returns. We agree with respondent. A taxpayer's position may be adequately disclosed either in a statement attached to the tax return, or on the tax return itself. Sec. 6661(b)(2)(B)(ii); Accardo v. Commissioner, 942 F.2d at 453; Antonides v. Commissioner, 91 T.C. at 701. *50 In the instant case, petitioner did not attach a statement to his 1984 or 1986 tax return explaining his position regarding the payments to Pre-Paid which were deducted on his tax returns. Thus, we examine whether petitioner adequately disclosed his position on his tax returns. Disclosure can be accomplished under section 6661 by providing on the tax return sufficient information to enable respondent to identify the potential controversy involved. The standard for section 6661 requires more disclosure than that which is necessary to avoid the 6-year statute of limitations under section 6501(e)(1)(A). Schirmer v. Commissioner, 89 T.C. at 285-286. The regulations provide that respondent may promulgate revenue procedures which prescribe the circumstances in which information provided on the tax return will constitute adequate disclosure for purposes of section 6661. Sec. 1.6661-4(c), Income Tax Regs.Rev. Proc. 85-19, 1985-1 C.B. 520, and Rev. Proc. 87-48, 1987-2 C.B. 645, describe the disclosure that constitutes adequate disclosure for purposes of section 6661 for *51 tax returns filed in 1984 and 1986. Although both revenue procedures list several categories of expenses, none of the categories address the types of payments reported by petitioner on his tax returns. Petitioner concedes that the revenue procedures do not show Schedule C as adequate disclosure for the Pre-Paid deductions. Petitioner's contention on this point is as follows: It [the cited revenue procedure] does not list Schedule C, but it does state that repairs as opposed to capital expenditures can be adequately disclosed by the amount stated as trade or business expenses on the return. [8]
*52 It is evident that petitioner does not fall into the specific safe harbors provided by the revenue procedure. We regard petitioner's contention as essentially an argument by analogy, and we consider that contention in the course of our analysis infra. In the instant case, the potential controversy that must be disclosed is whether petitioner was entitled to deduct all of the payments in the first year of the contracts or was required to capitalize the payments and amortize the deductions over the 5-year terms of the contracts. Nothing on the tax returns sufficed to enable respondent to identify this potential controversy. Petitioner points to the revenue procedure's safe harbor with respect to repairs and capital expenditures. Although the concept may be substantially similar, nothing in the record suggests that unexplained deductions for "Commissions", "Interest on business indebtedness", "Legal and Professional Services", "General Administrative", and "Claims" for 1984, or for "Commissions", "Interest", "Claims", or "Administration" for 1986, would alert respondent to the significant possibility that a capital-expenditure-v.-current-expense dispute was implicated. The *53 tax returns did not suggest that the expenditures were "up-front" payments that entitled petitioner to benefits over 5-year periods. Petitioner does not contend that Form 8271, "Investor Reporting of Tax Shelter Registration Number", which was attached to his 1984 income tax return, constitutes adequate disclosure, and we conclude that it does not. Nothing on that form indicates the potential controversy regarding the current deductibility of the payments. We conclude that petitioner did not adequately disclose the potential controversy relating to the payments on his 1984 and 1986 tax returns. See Lair v. Commissioner, 95 T.C. 484, 494 (1990). We hold for respondent on this issue. [9]
*54 III. Waiver of Addition to Tax
Petitioner contends that respondent has abused her discretion in failing to waive all or part of the substantial understatement addition to tax for 1984 and 1986 pursuant to section 6661(c). Petitioner argues that he had reasonable cause for the understatements, and acted in good faith. Respondent contends that there was no abuse of discretion in failing to waive the substantial understatement addition to tax for 1984 and 1986. Respondent contends that petitioner did not have reasonable cause for the understatements and did not act in good faith. We agree with respondent that there was no abuse of discretion. Section 6661(c)[10] provides that the Secretary may waive all or part of the addition to tax under section 6661 if the taxpayer shows (1) there was reasonable cause for the understatement, and (2) the taxpayer acted in good faith. The denial of a waiver by the Secretary is reviewable by this Court on an abuse-of-discretion basis. Karr v. Commissioner, 924 F.2d 1018, 1026 (11th Cir. 1991), affg. Smith v. Commissioner, 91 T.C. 733 (1988); Mailman v. Commissioner, 91 T.C. 1079, 1082-1084 (1988). *55 In other words, it is not enough for petitioner to persuade us that we would have waived the addition to tax -- petitioner has the burden of persuading us that, in refusing to waive the addition to tax, respondent has exercised this discretion "arbitrarily, capriciously, or without sound basis in fact." Mailman v. Commissioner, 91 T.C. at 1084; see Capitol Federal Savings & Loan v. Commissioner, 96 T.C. 204, 213, 223 (1991). *56 The most important factor in determining reasonable cause and good faith under section 6661(c) is "the extent of the taxpayer's effort to assess [his] proper tax liability under the law." Mailman v. Commissioner, 91 T.C. at 1084; sec. 1.6661-6(b), Income Tax Regs. The regulation provides the following examples of circumstances that may indicate reasonable cause and good faith: (1) Reliance on a proposed regulation; (2) an honest mistake of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer; or (3) a computational or transcriptional error. Sec. 1.6661-6(b), Income Tax Regs.
Petitioner's reliance on an attorney or accountant in the preparation of his return or general advice about the tax treatment of an item does not necessarily constitute a showing of reasonable cause and good faith. Sec. 1.6661-6(b), Income Tax Regs. Reliance on the advice of an attorney or accountant constitutes a showing of reasonable cause and good faith under section 6661(c) only if, "under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith." Sec. 1.6661-6(b), Income Tax Regs.
In deciding *57 whether or not respondent used her discretion arbitrarily, capriciously, or without a sound basis in fact, we examine the facts in the instant case, which involve the current deductions of payments to Pre-Paid. On the one hand, petitioner was an orthopedic surgeon and not a tax professional. Petitioner relied on the advice of Don Atkins and Blake Atkins, each of whom is an attorney and C.P.A., and neither of whom was an investor in or involved with Pre-Paid. Don Atkins had prepared or reviewed petitioner's tax returns since about 1970. Petitioner asked Don Atkins and Blake Atkins to see if the reinsurance program was on the "up-and-up". Petitioner also confirmed that Jaques, Stonecipher, and Haney were investing their own money in Pre-Paid. On the other hand, petitioner had a variety of financial investments during the years before the Court, see supra table 1; thus, he was not a "babe in the woods" as to the need for complying with the tax laws as to his investments. Petitioner's claimed but disallowed Pre-Paid deductions would have enabled him to eliminate the greater part of his income tax liabilities (61 percent for 1984, 73 percent for 1986); [11] thus the "up-front" *58 feature of the Pre-Paid deductions was an unusually important matter to have had checked out. Petitioner and Blake Atkins knew that the material petitioner received as to the tax treatment of the claimed Pre-Paid deductions had come directly or indirectly from Jaques and that Jaques was far from a disinterested evaluator of the tax laws on this matter. Blake Atkins testified that he had the impression -- erroneous it turned out -- that there was a split of appellate court authority as to current deductibility, yet chose to do nothing to disclose on petitioner's tax return that the claimed deductions had already been rejected by some appellate courts. If our role were to determine whether petitioner had reasonable cause and acted in good faith, then this would be a close question, on which petitioner might prevail. *59 However, for the years before the Court our role is much more limited. See supra the last paragraph of note 10. As we stated in Mailman v. Commissioner, 91 T.C. at 1084 -- Unlike other additions to tax such as for failure to timely file (sec. 6651(a)(1)), the statute does not provide that the taxpayer's proof of reasonable cause will excuse the taxpayer's misfeasance.
To put it another way, under the statute's language petitioner's showing of reasonable cause and good faith serve only to bring petitioner to the point where respondent "may waive all or any part of the addition to tax" (sec. 6661(c); emphasis added). That is, such a showing gets petitioner into the game; in order to win the game, petitioner must show that the reasonable cause and good faith are so clear that respondent's refusal to waive is an abuse of discretion. Although the considerations in petitioner's favor are entitled to weight, so are the considerations that point against petitioner. Under these circumstances, we cannot say that respondent's discretion was exercised "arbitrarily, capriciously, or without sound basis in fact." Mailman v. Commissioner, 91 T.C. at 1084. *60 Accordingly, we conclude that respondent's failures to waive all or part of the additions to tax for the years before us were not abuses of discretion. We view petitioner in the instant case as more experienced and sophisticated, and confronted with a more obvious conflict of interest on the part of the sole source of information about the Pre-Paid program and the tax treatment of payments thereunder, than were the taxpayers in Vorsheck v. Commissioner, 933 F.2d 757, 758-759 (9th Cir. 1991), affg. in part and revg. in part an Oral Opinion of this Court, and Heasley v. Commissioner, 902 F.2d 380, 384-385 (5th Cir. 1990), revg. T.C. Memo. 1988-408. Petitioner directs our attention to language in United States v. Boyle, 469 U.S. 241, 251 (1985), which discusses the issue of reasonable cause under section 6651(a)(1). As we noted in Mailman v. Commissioner91 T.C. at 1084, proof of reasonable cause in a section 6651(a)(1) context is not enough to carry the day for a taxpayer under section 6661. We conclude (and we have found) that respondent *61 did not exercise her discretion arbitrarily, capriciously, or without sound basis in fact. Accordingly, we conclude that respondent did not abuse her discretion as to the Pre-Paid adjustments. We hold for respondent on this issue. IV. Constitutionality of 25-percent Rate
Petitioner contends that the application to him of the 25-percent rate for the section 6661 addition to tax is retroactive and violates his constitutional rights to due process and equal protection. Respondent contends that the retroactive application of the 25-percent rate does not violate petitioner's constitutional rights. We agree with respondent. The 25-percent rate under section 6661 applies in the instant case even though the rate was only 10 percent under the law as in effect when petitioner filed his tax returns for the years in issue. Pallottini v. Commissioner, 90 T.C. 498 (1988). This application does not violate taxpayers' constitutional due process and equal protection rights. Licari v. Commissioner, 946 F.2d 690 (9th Cir. 1991), affg. T.C. Memo. 1990-4; Estate of McClanahan v. Commissioner, 95 T.C. 98, 105 (1990). *62 We hold for respondent on this issue. The instant case was tried after the trial in Krizer v. Commissioner, T.C. Memo. 1991-638, and at the same trial session as Fisher v. Commissioner, T.C. Memo. 1992-740, and involves the same Pre-Paid arrangement as in Krizer and Fisher. The transcript of Jaques' testimony in Krizer was stipulated into evidence in the instant case. After the opinion was issued in Krizer, holding for respondent, the parties in the instant case filed supplemental briefs. We have examined these briefs. Although we agree that petitioner's presentation in the instant case (and in Fisher) appears to be more complete, especially as to the waiver issue, nothing in that presentation leads us to a different result on the Pre-Paid issue in the instant case (and in Fisher), than the result we reached in Krizer. To take account of respondent's concessions, supra note 1, Decision will be entered for respondent as to 1984 and 1986, and for petitioner as to 1985. Footnotes
1. Respondent concedes the addition to tax for 1985; the 1985 addition to tax results from the shifting of a $ 14,251 rental property depreciation item from 1985 to 1984. See infra table 2. Also, respondent concedes that the adjustments do not involve tax shelter items as defined in sec. 6661(b)(2)(C). Unless indicated otherwise, all section and subchapter references relating to 1984 and 1985 are to sections and subchapters of the Internal Revenue Code of 1954 as in effect for 1984 and 1985, and all section and subchapter references relating to 1986 are to sections and subchapters of the Internal Revenue Code of 1986 as in effect for 1986.↩
1. As result of deductions, petitioner's claimed net losses on these two items aggregate about $ 125,000 for 1984, $ 45,000 for 1985, and $ 110,000 for 1986.↩
2. As a result of capital loss carryovers, limitations on loss deductions, and long-term capital gains exclusions, petitioner's adjusted gross income capital gains (losses) amount to the following: 1984 -- $ 3,719.50; 1985 -- ($ 3,000); 1986 -- ($ 3,000).↩
2. On brief, the parties refer to the payments to Pre-Paid variously as "cash payments", "payments", "ceding commissions", and "deductions" relating to Pre-Paid. It appears that all the categories of deductions listed in the Schedules C (commissions, administration expenses, claims, interest, and professional fees) are involved in the parties' arguments, even though at times reference is made only to the "ceding commissions". We will consider all the payments to Pre-Paid which are listed in the Schedules C together, and we will use the term "payments" in referring to them.↩
3. Petitioner first invested in Pre-Paid's reinsurance pool in 1983. His 1984 tax return shows tax effects of his 1983 investment as well as his 1984 investment.↩
4. SEC. 6661. SUBSTANTIAL UNDERSTATEMENT OF LIABILITY. * * * (b) Definition and Special Rule. -- * * * (2) Understatement. -- * * * (B) Reduction for understatement due to position of taxpayer or disclosed item. -- The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to -- (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.
[Sec. 6661 was repealed by sec. 7721(c)(2) of the Omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101-239, 103 Stat. 2106, 2399. The substance of former sec. 6661(b)(2)(B)↩ now appears as sec. 6662(d)(2)(B).]
5. Pars. (a) and (b) of sec. 1.6661-3, Income Tax Regs., provide, in pertinent part, as follows: § 1.6661-3 Substantial Authority. -- (a) General rule. -- (1) * * * (2) Substantial authority standard. The substantial authority standard is less stringent than a "more likely than not" standard (that is, a greater than 50-percent likelihood of being upheld in litigation), but stricter than a reasonable basis standard (the standard which, in general, will prevent imposition of the penalty under section 6653(a), relating to negligence or intentional disregard of rules and regulations). Thus, a position with respect to the tax treatment of an item that is arguable but fairly unlikely to prevail in court would satisfy a reasonable basis standard, but not the substantial authority standard. (b) Determination of whether substantial authority is present. -- (1) Evaluation of authorities. There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions. All authorities relevant to the tax treatment of an item, including the authorities contrary to the treatment, are taken into account in determining whether substantial authority exists and the weight of those authorities is determined in light of the pertinent facts and circumstances in the manner prescribed in paragraph (b)(3) of this section. There may be substantial authority for more than one position with respect to the same item. The taxpayer's belief that the authorities with respect to the tax treatment of an item constitute substantial authority is not taken into account in determining whether there is substantial authority. * * * (3) Nature of analysis. Except as otherwise provided in this section, the weight of the authorities for the tax treatment of an item is determined by the same analysis that a court would be expected to follow in evaluating the tax treatment of the item. Thus, the weight of authorities depends on their persuasiveness and relevance as well as their source. For example, a case or revenue ruling having some facts in common with the tax treatment at issue would not be considered particularly relevant if the authority is materially distinguishable on its facts, or is otherwise inapplicable to the tax treatment at issue. Similarly, an authority that merely states a conclusion ordinarily would be given less weight than an authority that reaches its conclusion by cogently relating the applicable law to pertinent facts. There may be substantial authority for the tax treatment of an item despite the absence of certain types of authority. Thus, a taxpayer may have substantial authority for a position that is supported only by a well-reasoned construction of the applicable statutory provision. (4) Special rules -- * * * (iii) When substantial authority determined. For purposes of section 6661↩, there is substantial authority for the tax treatment of an item if there is substantial authority at the time the return containing the item is filed or there was substantial authority on the last day of the taxable year to which the return relates.
6. Sec. 831(b)(2) provides an alternative to the general rule of sec. 831(a) which "shall apply to every insurance company other than life" if certain requirements are met. Secs. 831 and 832 do not define "insurance company". Sec. 1.831-3(a), Income Tax Regs., provides that "As used in this section and section 832 and the regulations thereunder, the term 'insurance companies' means only those companies which qualify as insurance companies under the definition provided by paragraph (b) of § 1.801-1 and which are subject to the tax imposed by section 831." The regulation referred to (sec. 1.801-1) applies only to taxable years beginning before Jan. 1, 1955, and so does not apply to the instant case. Sec. 1.801-2, Income Tax Regs.↩
7. Tatge, "Tax Planning Opportunities Through Reinsurance Still Available Despite TEFRA", 59 J. Taxn. 260↩ (Oct. 1983); Kafka, "The Deductibility of Indemnity Reinsurance Ceding Commissions", 38 J. Am. Socy. of CLU 82 (Mar. 1984).
8. Rev. Proc. 85-19, 1985-1 C.B. 520, provides, in pertinent part, as follows, with regard to tax returns filed in 1984: SEC. 2. BACKGROUND * * * .04 In general, rules providing guidance on the adequacy of disclosure for purposes of reducing an understatement under section 6661 of the Code will be set forth in regulations. The Commissioner has determined that under certain circumstances described below in section 3 of this revenue procedure, disclosure of an item on the return with no further statement is adequate disclosure for purposes of section 6661, provided the taxpayer furnishes all required information in accordance with the applicable forms and instructions. This revenue procedure provides guidelines as to when such disclosure is adequate. * * * SEC. 3. PROCEDURE * * * (b) Trade or Business Expenses: * * * (6) Repair as Opposed to Capital Expenditure: The amount of repairs stated.
[Rev. Proc. 87-48, 1987-2 C.B. 645 (amplifying Rev. Proc. 86-22, 1986-1 C.B. 562), provides the identical instructions with regard to tax returns filed in 1986, except that the quoted language appears in secs. 3.04 and 4(b)(6) of Rev. Proc. 87-48↩.]
9. Petitioner's 1985 tax return, in evidence, did not provide any greater disclosure. It would not have been needed for 1985, because petitioner did not make payments to Pre-Paid in 1985. Petitioner's tax return for 1983, when he made payments to Pre-Paid, is not in evidence and it was represented to the Court that petitioner's 1983 tax return did not provide any more disclosure than did petitioner's 1984 tax return. We do not consider in the instant case whether a disclosure in 1 year's tax return may be taken into account in deciding whether there has been adequate disclosure for a later year.↩
10. Sec. 6661 provides, in pertinent part, as follows: SEC. 6661. SUBSTANTIAL UNDERSTATEMENT OF LIABILITY. * * * (c) Authority to Waive. -- The Secretary may waive all or any part of the addition to tax provided by this section on a showing by the taxpayer that there was reasonable cause for the understatement (or part thereof) and that the taxpayer acted in good faith.
[Sec. 6661↩ was repealed by sec. 7721(c)(2) of OBRA 89, 103 Stat. 2399. The waiver provision has been replaced by a reasonable cause exception (which now appears as sec. 6664(c)(1)) based on the same circumstances which, under pre-OBRA 89 law, could have been the basis of a waiver. The new provision applies to tax returns the due date of which is after Dec. 31, 1989, and so does not apply to the instant case.]
11. The 1984 claimed Pre-Paid deductions would have saved $ 44,638 of petitioner's $ 73,267 liability. The 1986 claimed Pre-Paid deductions would have saved $ 41,603 of petitioner's $ 56,726 liability.↩