**Anthony C. and Mildred M. LICARI, Petitioners–Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 90–70258.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1991.

Decided Oct. 7, 1991.

J. Clancy Wilson, Branton & Wilson, San Diego, Cal., for petitioners-appellants.

Kenneth W. Rosenberg, Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before FLETCHER and CANBY, Circuit Judges, and McNICHOLS,* District Judge.

FLETCHER, Circuit Judge:

## OVERVIEW

Taxpayers, Anthony and Mildred Licari, appeal the Tax Court's application of a 25% penalty pursuant to 26 U.S.C. § 6661 to their undisputed understatement of tax liability. The Licaris contend that retroactive application of the 25% penalty, rather than the 10% penalty rate that applied at the time they filed their tax returns, violated their constitutional rights.[1] We affirm.

## FACTS

In a Notice of Deficiency dated April 11, 1986, the Internal Revenue Service ("IRS") determined that the Licaris had substantially understated their income in taxable years 1981 through 1984. According to the Notice of Deficiency, the Licaris' underpayments subjected them to the 10% penalty then applicable pursuant to section 6661 for substantial understatement of tax liability for taxable years 1982 through 1984.[2] Effective on October 21, 1986, Congress, in

---

\* Honorable Robert J. McNichols, Chief United States District Judge for the Eastern District of Washington, sitting by designation.

1. The Licaris also contest imposition of the fraud penalty to their underpayment of taxes pursuant to 26 U.S.C. § 6653. In a separate memorandum disposition filed on this date, 946 F.2d 898 (table), we affirm imposition of that penalty.

2. Enacted on September 3, 1982 as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, section 6661 applied to returns due to be filed after December 31, 1982. According to that section:

> If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 10 percent of the amount of any underpayment attributable to such an understatement.

In turn, a "substantial understatement of income tax" occurs "if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or ... $5,000." 26 U.S.C. § 6661(b)(2)(A)(i), (ii).

section 8002 of the Omnibus Budget Reconciliation Act of 1986 ("OBRA"), Pub.L. No. 99–509, 100 Stat. 1874, 1951 (1986), increased the penalty set by section 6661 from 10% of the underpayment of tax liability to 25% of the underpayment.[3] Congress specifically directed that the increased penalty established in section 8002 be applied to "penalties assessed ·after the date of the enactment of this Act." *Id.* § 8002(b). Thus, Congress provided for application of the increased penalty rate to returns filed before the date of the enactment, so long as no penalty had been assessed. At trial, over the Licaris' objection, the Tax Court granted the Commissioner's motion to assert the increased penalty against the Licaris pursuant to OBRA § 8002 for taxable years 1982 through 1984. The Licaris appeal this decision.

## DISCUSSION

On appeal, the Licaris contend that retroactive application of the enhanced penalty violates their right to both equal protection and due process. Because the Licaris' challenges present solely legal issues, we review them de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We discuss each challenge in turn.

### I. *Equal Protection*

The Licaris first contend that the classifications made in OBRA section 8002 are "patently arbitrary and irrational and . . . unrelated to any purpose articulated by Congress." Opening Brief, at 33. According to the Licaris, applying the enhanced penalty retroactively in no way furthers Congress' stated goal in passing section 6661 of attempting to deter taxpayers from playing the "audit lottery" by taking highly questionable positions on their returns in the hope of escaping close review. Accordingly, the Licaris maintain that retroactive application of .section 8002 constitutes a violation of their right to equal protection.

In order to survive equal protection scrutiny, statutory classifications affecting economic interests must be rationally related to a legitimate government purpose. *Regan v. Taxation With Representation,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983). "Normally, a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts." *United States v. Maryland Savings–Share Ins. Corp.,* 400 U.S. 4, 6, 91 S.Ct. 16, 17, 27 L.Ed.2d 4 (1970). Moreover, "[o]ne who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911).

As the Licaris contend, the legislative history of section 6661 indicates that its principal objective is to deter taxpayers from playing the "audit lottery." S.Rep. No. 494, 97th Cong., 2d Sess. 272–73 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 781, 1019–20.[4] However, the

---

3. Section 6661 was subsequently repealed by § 7721(c)(2) of the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239 (Dec. 19, 1989), which enacted a unified penalty scheme to be applied prospectively to tax returns due after December 31, 1989.

4. According to the Senate Report on section 6661:

The committee believes that an increasing part of the compliance gap is attributable to the "audit lottery." The audit lottery is played by taxpayers who take questionable (although non-negligent) positions not amounting to fraud or negligence on their returns in the hope that they will not be audited. If a taxpayer is audited and the questionable position is challenged, then he or she pays the additional tax owing plus interest. Importantly, however, taxpayers are not exposed to any downside risk in taking highly questionable positions on their tax returns since even resolution of the issue against the taxpayer will require only payment of the tax that should have been paid in the first instance with interest to reflect the cost of the "borrowing." . . . Thus, in the event that the questionable position is not detected, the taxpayer will have achieved an absolute reduction in tax without cost or risk. The committee believes, therefore, that taxpayers should be subject to a penalty designed to deter the use of undisclosed questionable reporting positions.

1982 U.S.Code Cong. & Admin.News at 1019–20.

Senate Report accompanying OBRA, which increased the penalty set out in section 6661, demonstrates that the amending legislation had another objective: the reduction of the budget deficit. S.Rep. No. 348, 99th Cong., 2d Sess. 3–4, 1986 U.S.Code Cong. & Admin.News 3607. Section 8002, the section that increased the tax penalty established in section 6661, is one of several measures intended to enhance the revenue. *See also Karpa v. C.I.R.*, 909 F.2d 784, 786 (4th Cir.1990). The determination to apply the increased penalty retroactively to tax deficiencies not yet assessed would rationally further Congress' goal, by ensuring that higher revenues from fines would compensate the government for the cost of enforcing the tax laws. Congress rationally chose to impose this penalty retroactively only on those upon whom a penalty had not yet been assessed because only in those cases was the matter still open as between the taxpayer and the Commissioner. *Lapin v. C.I.R.*, Tax Court Mem.Dec. (P–H), ¶ 90,343 at 1631 (1990). Moreover, the Commissioner points out that retroactive imposition of an increased penalty would rationally further Congress' goal in section 6661 of deterring tax underpayments by encouraging those taxpayers who have already filed returns in which they took questionable positions to come forward before they are audited. *See* Treas. Reg. § 1.6661–6(c) (1990) (Commissioner will waive penalty for substantial understatement of income if taxpayer discloses additional amount of tax due before contact initiated); *see also Karpa v. C.I.R.*, 909 F.2d 784, 788 n. 7. Because the legislative classification here is supported by a rational basis, the Licaris' equal protection challenge fails.

## II. *Due Process*

 The Licaris' due process challenge raises a thornier issue. Federal courts have long been hostile to legislation that interferes with settled expectations. *See, e.g., Railroad Retirement Bd. v. Alton R.R. Co.*, 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468 (1935). It is clear, however, that Congress may, without violating the due process clause, enact legislation impos-

ing economic burdens retroactively if it is justified by a "legitimate legislative purpose furthered by rational means." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984); *see also DeMartino v. C.I.R.*, 862 F.2d 400, 409 (2d Cir.1988). An alternative expression of this test, which originated in the tax context but has been applied more generally, would find retroactive legislation constitutional unless its application is so "harsh and oppressive as to transgress the constitutional limitation." *Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 126, 83 L.Ed. 87 (1938), (cited in *Pension Benefit Guaranty*, 467 U.S. at 733, 104 S.Ct. at 2720); *see Pension Benefit Guaranty*, 467 U.S. at 733, 104 S.Ct. at 2720. ("[A]lthough we have noted that retrospective civil legislation may offend due process if it is 'particularly "harsh and oppressive"' ... that standard does not differ from the prohibition against arbitrary and irrational legislation."); *Canisius College v. United States*, 799 F.2d 18, 25 (2d Cir.1986) (The "'harsh and oppressive' test does not differ from the test of constitutionality applicable to economic legislation generally, namely, that such legislation is constitutional unless Congress has acted in an arbitrary and irrational way."), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987).

Both parties couch their arguments in terms of the extra deference paid to Congress when evaluating the retroactive application of increased tax rates. In *United States v. Darusmont*, 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981), the Supreme Court indicated that the mere fact that an increase in tax rates was made retroactive would rarely constitute a violation of the due process clause. According to the Court:

"Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens.

Since no citizen enjoys immunity from that burden, its retroactive imposition

does not necessarily infringe due process, and to challenge the present tax it is not enough to point out that the taxable event, the receipt of income, antedated the statute."

*Darusmont,* 449 U.S. at 298, 101 S.Ct. at 552 (quoting *Welch v. Henry,* 305 U.S. at 146–47, 59 S.Ct. at 125); *see also* Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv.L.Rev. 692, 706 (1960) (As early as 1935 one commentator observed that " 'arbitrary retroactivity' may continue ... to rear its head in tax briefs, but for practical purposes, in this field, it is as dead as wager of law.") (footnote omitted). In fact, to the best of our knowledge, the Supreme Court has never sustained a due process challenge to the retroactive application of an income tax. Zelenak, *Are Rifle Shot Transition Rules & Other Ad Hoc Legislation Constitutional?,* 44 Tax L.Rev. 563, 608 (1989). Were this level of deference applied in evaluating the Licaris' claim, the failure of the Licaris' due process challenge would be almost certain.

Nevertheless, the great deference accorded the retroactive application of tax statutes is not fatal to the Licaris' claim because it is not automatically applied to the tax penalty at issue here. The Supreme Court has specifically linked the permissive standard for approving retroactivity with the fact that it is not a penalty, but a tax. *Darusmont,* 449 U.S. at 298, 101 S.Ct. at 552. Furthermore, in granting deference to retroactive application of tax laws, the Court has placed considerable weight on the brevity of the period of retroactivity implicated by most tax laws, generally the calendar year at issue. *See id.* at 296–97, 101 S.Ct. at 552 ("This 'retroactive' application apparently has been confined to short and limited periods required by the practicalities of producing national legislation. We may safely say that it is a customary congressional practice."). Neither of these conditions apply here. The retroactivity at issue in the case at bar involves a penalty rather than a tax. Moreover, the retroactivity at issue would extend to all tax penalties assessed pursuant to section 6661, which applies to all tax

returns due after December 31, 1982. Accordingly, the period of retroactivity is far longer than required simply by the practicalities of producing national legislation. It would therefore seem that the rationales supporting the lenient review given to retroactive application of tax laws do not apply in this case.

■ However, even under the somewhat less deferential standard of review applicable to laws outside of the tax arena, we believe that retroactive application of the increased penalty must be sustained. The Supreme Court has emphasized Congress' well established power to "adjust[ ] the burdens and benefits of economic life," and has directed that legislation that adjusts these burdens and benefits be treated "with a presumption of constitutionality." *Pension Benefit Guaranty,* 467 U.S. at 729, 104 S.Ct. at 2717. According to the Court,

> the strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively. Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches.

*Id.*

Tax penalties fall within the category of legislation that "adjusts the benefits and burdens of economic life." The Supreme Court long ago counseled that tax penalties "are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering v. Mitchell,* 303 U.S. 391, 401, 58 S.Ct. 630, 634, 82 L.Ed. 917 (1938). Characterized in this manner, the tax penalty at issue although not entitled to the extremely weighty deference accorded tax rates, still receives "strong deference." Evaluating the penalty before us with the requisite deference, we find that the retroactive application of the increased tax penalty on those who would gain by understatement is

a rational means by which to guard the public fisc by reimbursing the government for heavy burden of investigative and prosecutorial costs incident to ferreting out tax underpayment. *See also Karpa*, 909 F.2d at 788; *cf. Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 18, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1976) ("[T]he imposition of liability [on employers] for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor."). In addition, imposition of the penalty retroactively also benefits the public revenue by encouraging those taxpayers with whom the I.R.S. has made no previous contact to amend tax returns that understate their income so that the I.R.S. will waive the penalty.

Phrased in terms of the alternative test for assessing retroactivity, we do not find the application of the penalty here imposed to be "so harsh and oppressive as to transgress the constitutional limitation." *Welch v. Henry*, 305 U.S. at 147, 59 S.Ct. at 126. The four-year period of retroactivity raises some cause for concern; however, we do not believe that this, by itself, is sufficient to meet the "harsh and oppressive" test. As stated by the Second Circuit,

> there is nothing intrinsic in the 'harsh and oppressive' test ... or in the 'arbitrary and irrational' test ... that requires a one-year bench mark as the constitutional limit of retroactivity. To the contrary, the nature of those tests, requiring that the court '[i]n each case ... consider the nature of the [legislation] and the circumstances in which it is laid,' *Welch*, 305 U.S. at 147, 59 S.Ct. at 125, suggests that the length of the period retroactively affected should be considered merely as a factor—albeit a significant factor—in the overall assessment of the constitutionality of the legislation.

*Canisius*, 799 F.2d at 26–27 (sustaining legislation involving four-year period of retroactivity). *Accord Temple University v. United States*, 769 F.2d 126, 134–35 (3d Cir.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1986) (same). Here, we are not presented with a case in which an individual acted in accordance with the law as it stood at the time only later to be subjected to a penalty; instead, those subjected to the increased penalties, like the Licaris, knew at the time that they filed their returns that they were not acting in accordance with the law and could be subjected to a fine. They also knew that their unlawful actions would force the government to incur considerable costs in connection with the investigation and prosecution of their offense. Under these circumstances, we do not find imposition of the increased penalty unduly "harsh and oppressive." *Cf. DeMartino v. C.I.R.*, 862 F.2d 400, 409 (2d Cir.1988) (upholding retroactive application of statute applying underpayment penalty to sham transactions as not unconstitutionally harsh or oppressive).

AFFIRMED.