USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1622 THOMAS H. McNICHOLS, Petitioner, Appellant, v. COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee. ____________________ APPEAL FROM THE UNITED STATES TAX COURT [Hon. Theodore Tannenwald, Jr., Tax Court Judge] _______________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ Cyr, Circuit Judge. _____________ ____________________ Philip M. Giordano, with whom Linda L. Trent, and Ricklefs & __________________ ______________ __________ Giordano were on brief for petitioner. ________ Francis M. Allegro, Counselor to the Assistant Attorney ___________________ General, with whom Michael L. Paup, Acting Assistant Attorney ________________ General, Gary R. Allen, Kenneth L. Greene, and Alice L. Ronk, ______________ _________________ ______________ Attorneys, Tax Division, Department of Justice, were on brief for respondent. ____________________ December 29, 1993 ____________________ BOWNES, Senior Circuit Judge. This is an appeal BOWNES, Senior Circuit Judge. ____________________ from a decision of the tax court holding the petitioner civilly liable for deficiencies in income tax for the years 1981 and 1982. The tax court also found petitioner liable for additions to the tax due. The amounts are substantial, but the computations are not contested. The tax court brushed aside petitioner's main defense, that imposition of the deficiencies and additions to tax violates the proscription against excessive fines of the Eighth Amendment and violates the Double Jeopardy protection against multiple punishments under the Fifth Amendment. That contention is the main issue before us. I. I. Petitioner is a convicted drug dealer. In October 1987 petitioner was indicted along with Frederick A. Carroll on a number of criminal charges: distribution of and conspiracy to distribute marijuana; violations of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1962 and 1963; conspiracy to defraud the United States; and subscribing to false tax returns. In February of 1988 the Internal Revenue Service sent a notice of deficiency to petitioner assessing deficiencies in income and additions to tax for the years 1981 and 1982. The interest on the tax and additions thereto -2- 2 continue to accrue. As of January 26, 1990, petitioner's tax liability totalled $2,422,963.94. On June 20, 1988, petitioner entered into a plea agreement with the United States Attorney whereby he agreed to plead guilty to all the counts in the indictment in which he was named. He also agreed to forfeit all right, title and interest in the properties described in the indictment. Petitioner claims that the value of the forfeited property is "approximately $1,200,000." (Brief at 3.) The pertinent provisions of the plea agreement provide: 7. Mr. McNichols agrees to relinquish all right, title or interest in any monies held in any foreign bank accounts (or those located in St. Thomas, United States Virgin Islands) held in his name or on his behalf, or on behalf of any entity as to which he is the true beneficiary. (The monies so held on behalf of Mr. McNichols and Thomas H. McNichols are believed to be in excess of $600,000.00). Mr. McNichols further agrees promptly to take all steps necessary to place any of the above- described monies within the custody and control of the United States. Mr. McNichols also agrees to hold harmless any person, corporation or bank which assists the United States in recovering such monies. Any monies recovered in this manner shall be held in escrow in an interest- bearing account in the name of the Office or by the Clerk of the District Court. Should it be determined by a court of appropriate jurisdiction (e.g. United States Tax Court), or by agreement between the parties, that Mr. McNichols owes any taxes, interest or penalties to the United States, then the Office agrees -3- 3 that any of the recovered monies held in the above-described escrow account which were once held on behalf of Mr. McNichols will be paid to the Internal Revenue Service in partial satisfaction of any tax debt owed by Mr. McNichols. Should it be determined that Mr. McNichols owes no taxes, interest, or penalties, the recovered monies shall be forfeited to the United States. In that case, Mr. McNichols will provide any assistance requested of him to forfeit the recovered monies to the United States. 8. The United States Attorney's Office makes no promises with respect to any civil tax liability incurred by Mr. McNichols (with the exception of the promise made in paragraph 7 above). To the extent permitted under all applicable laws and regulations, the United States Attorney's Office will recommend that the Internal Revenue Service not seek to satisy [sic] any tax assessment by levying and forfeiting the house and real property at 12 Edgemont Street, Boston, Massachusetts. The United States does not in any way represent that it can prevent the Internal Revenue Service from levying on the above-described property. On October 21, a judgment of conviction was entered. Pursuant to that judgment petitioner was sentenced to ten years incarceration and is now serving that sentence. The case before the tax court was submitted fully stipulated along with joint exhibits. Taxpayer conceded: that "[d]uring the taxable years 1981 and 1982, [he] derived taxable income and incurred costs from the importation and sale of marijuana"; that he "did not report any of the taxable income received or costs incurred from the sale of -4- 4 marijuana . . . on his federal income tax returns for [the 1981 and 1982] taxable years"; and that "[i]n connection with [his] illegal drug activities, [he] did not maintain and, therefore, could not submit complete and accurate books and records of his income producing activities for the taxable years 1981 and 1982 as required by the applicable provisions of the Internal Revenue Code and the regulations promulgated thereunder." In addition, the taxpayer agreed that he had "fraudulently,and with intent to evade tax omitted taxable income from his federal tax returns for the taxable years 1981 and 1982," and that "[a] part of the underpayments of tax which was required to be shown in his federal income tax returns for the taxable years 1981 and 1982 was due to fraud." Taxpayer also stipulated that he had purchased two shell companies, opened various bank accounts in behalf of these companies, and had "deposited, or caused to be deposited" over $1,720,565 into these companies' bank accounts during 1981 and 1982. Based on the stipulated facts the tax court found the petitioner liable for tax deficiencies and additions thereto for the years 1981 and 1982 in the total amount of $1,169,699.00. This appeal followed. We affirm. II. II. Petitioner contends that the imposition by the IRS of the tax deficiencies and additions thereto on property -5- 5 already forfeited to the government constitutes an excessive fine under the Eighth Amendment and double jeopardy under the Fifth Amendment. Although it could be argued that under the plea agreement petitioner agreed to accept the assessment of income taxes due we will do, as the parties have done, and address the merits of petitioner's appeal. Petitioner relies primarily on two recent Supreme Court cases, Austin v. United ______ ______ States, ____ U.S. ____, 113 S. Ct. 2801 (1993) and United ______ ______ States v. Halper, 490 U.S. 435 (1989). ______ ______ Austin was a forfeiture case. Austin was indicted ______ and subsequently pleaded guilty in a South Dakota state court to one count of possessing cocaine and was sentenced to seven years imprisonment. Shortly after he pled guilty the United States filed a forfeiture action under 21 U.S.C. 881(a)(4) and (a)(7) in the United States District Court for South Dakota seeking forfeiture of Austin's mobile home and auto body shop. Austin, 113 S. Ct. at 2803. The Court found that ______ the Excessive Fines Clause of the Eighth Amendment was not limited to criminal actions. It phrased the issue as follows: "the question is not, as the United States would have it, whether forfeiture under 881(a)(4) and (a)(7) is civil or criminal, but rather whether it is punishment." Id. ___ at 2806. The Court found that historically forfeiture was viewed as punishment. It then found that because Congress -6- 6 "has chosen to tie forfeiture directly to the commission of drug offenses" the forfeiture statutes were punitive in nature, and were "subject to the limitations of the Eighth Amendment's Excessive Fines Clause." Id. at 2812. The Court ___ refused to establish a multifactor test for determining whether a forfeiture is constitutionally excessive, but left that for the lower courts to work out in the first instance. Id. ___ Using Austin as a springboard, petitioner argues ______ that the additions to the income tax were punitive, and that, by seizing his property and then subjecting that same property to an income tax along with penalties and interest, the IRS has violated the proportionality requirements of the Eighth Amendment. We decline to take the giant leap that petitioner urges for several reasons. First there is an insurmountable wall of tax cases, discussed infra, holding _____ that the government has a right to do precisely what it has done here. Second, the instant case is a civil income tax not a forfeiture case as was Austin. And Austin does not ______ ______ directly or impliedly suggest that either its holding or statements to the effect that a forfeiture can be an excessive fine under the Eighth Amendment are or should be applicable to any actions other than forfeitures under 21 U.S.C. 881(a)(4) and (a)(7). Nor, under the facts of this case, do we perceive any reason for applying the principles -7- 7 of Austin to petitioner. Petitioner agreed to the ______ forfeiture. He stipulated to the tax court that he derived unreported taxable income in 1981 and 1982 from the sale of marijuana. The plea agreement warned petitioner that income tax might be due. Indeed, prior to signing the plea agreement, petitioner was sent a notice of deficiency assessing taxes and penalties for the years 1981 and 1982. The Supreme Court in James v. United States, 366 U.S. 213 _____ ______________ (1961) made an observation that applies to petitioner: We should not continue to confound confusion, particularly when the result would be to perpetuate the injustice of relieving embezzlers of the duty of paying income taxes on the money they enrich themselves with through theft while honest people pay their taxes on every conceivable type of income. Id. at 221. We find no Eighth Amendment violations. ___ Petitioner's claim that the tax assessment, including penalties, violates the Fifth Amendment proscription against multiple punishments is based on United ______ States v. Halper. In Halper, defendant was the manager of a ______ ______ ______ company which provided medical services for patients eligible for medicare benefits. He submitted sixty-five separate false claims for services rendered to Blue Cross & Blue Shield of New York City. Blue Cross overpaid Halper's company a total of $585 and passed the overcharges along to the federal government. Halper was indicted on sixty-five counts of violating the False Claims Act, 18 U.S.C. 287. -8- 8 He was convicted on all sixty-five counts as well as on sixteen counts of mail fraud. He was sentenced to imprisonment for two years and fined $5,000. The government then sued Halper under the civil False Claims Act. Halper's criminal conviction was, of course, sufficient to ground civil liability. Under the provisions of the statute, Halper was subject to a penalty of more than $130,000. The district court refused to assess such a penalty, holding that to do so would result in punishment barred by the double jeopardy clause. The Supreme Court affirmed. The Court pointed out that the double jeopardy protection was "intrinsically personal." Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state. In making this assessment, the labels "criminal" and "civil" are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. United States v. Halper, 490 U.S. at 447. The Court went on _____________ ______ to say: To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the -9- 9 sanction as applied in the individual case serves the goals of punishment. Id. at 448. ___ We recognize that the language of the Court may play an appealing tune to one in petitioner's straits but the case is inapposite. Halper involved a specific statutory ______ penalty. The circumstances giving rise to the double jeopardy violation were unique. To use Halper as a base for ______ vaulting into the tax arena would be to misapply the case and distort its holding. We hold that there was no double jeopardy violation. Petitioner has also cited to bits and pieces of a number of other cases in an effort to bolster his arguments. We have examined them all and find they do not advance his claims by even one step. III. III. We now outline the wall of cases that bars the way to any defense by petitioner to the judgment of the Tax Court. Helvering v. Mitchell, 303 U.S. 391 (1938), is the _________ ________ foundation stone for the wall. The Court held that an acquittal on the criminal charge of a wilful attempt to evade taxes does not bar assessment and collection of the 50% civil penalty. The Court rejected defendant's contention that the 50% addition to the tax was not a tax but a criminal penalty intended as punishment. Id. at 399-400. It held that the ___ 50% addition was remedial: -10- 10 The remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Id. at 40l. (Footnote omitted.) ___ -11- 11 In James v. United States, the Court stated: _____ _____________ When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North _____ American Oil v. Brunet, supra, at p. 424. ____________ ______ _____ 366 U.S. at 219. Further, the Court noted that Congress did not intend to treat a law-breaking taxpayer differently from a law-abiding one. Id. at 220. ___ There are also some significant circuit court cases. In Karpa v. C.I.R., 909 F.2d 784 (4th Cir. 1990), the _____ ______ Fourth Circuit held that the retroactive imposition of a tax penalty for substantial understatement of tax liability did not violate the ex post facto clause of the Constitution. After discussing Halper, the court ruled that the increased ______ tax penalty was a civil sanction and therefore the ex post facto prohibition was not implicated. Karpa, 909 F.2d at _____ 788. In Traficant v. C.I.R., 884 F.2d 258 (6th Cir. _________ ______ 1989), the petitioner argued that his prior acquittal on criminal charges of bribery precluded the tax court from finding that he took bribes. Relying heavily on Helvering, _________ the Sixth Circuit upheld the tax court's ruling that neither issue preclusion nor double jeopardy foreclosed such a -12- 12 finding because the tax case was a civil proceeding and the burden of proof different than the one required in a criminal case. Wood v. United States, 863 F.2d 417 (5th Cir. ____ ______________ 1989), is very similar to the case at bar. As here, the IRS had imposed a tax on proceeds that had been forfeited to the government. Wood argued that this was "fundamentally unfair." In words that are directly applicable here, the court rejected Wood's claim: There is no dispute that Wood exercised complete dominion and control over the proceeds from the drug smuggling. It does not matter that by operation of law all right and title vested in the government as soon as the money was earned. . . . The legal test for taxable income is dominion and control, and that test in its terms excludes consideration of what happens to income after it flows from the taxpayer's hands. Id. at 419. ___ Our final case is Kenney v. C.I.R., 111 F.2d 374 ______ ______ (5th Cir. 1940). Its holding speaks for itself: The imposition of civil fraud penalties is not prohibited by the Fifth Amendment to the Constitution by reason of the petitioner's having previously plead guilty to such indictment, because the penalty imposed by Section 293(b) is a civil and not a criminal penalty. Helvering v. Mitchell, 303 U.S. 391, 58 _________ ________ S.Ct. 630, 82 L.Ed. 917. -13- 13 Id. at 375-76. ___ -14- 14 IV. IV. As a final issue, petitioner argues that the public policy that supports rehabilitation outweighs the pecuniary interests of the IRS. It is difficult to understand what this means and how it is relevant. We can only conjecture that petitioner suggests that if he does not have to pay income tax and additions thereto on his ill-gotten gains, he will be better prepared to again live in the style that his drug dealing made possible after he finishes his prison term. This is somewhat akin to the defendant who had killed both his parents asking mercy from the court because he was an orphan. The judgment of the Tax Court is affirmed. Costs The judgment of the Tax Court is affirmed. Costs ___________________________________________________ awarded to appellee. awarded to appellee. ____________________ -15- 15