William D. LITTLE, Petitioner–
Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellee.

No. 95–70240.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1996.

Decided Feb. 11, 1997.

Kenneth G. Gordon, Laski & Gordon, Los Angeles, CA, for petitioner–appellant.

Gary R. Allen, Jonathan S. Cohen, Curtis C. Pett, Tax Division, Department of Justice, Washington, DC, for respondent–appellee.

Before: REINHARDT and LEAVY, Circuit Judges, and COYLE,[1] District Judge.

Opinion by Judge COYLE; Partial Concurrence and Partial Dissent by Judge REINHARDT.

COYLE, District Judge:

Taxpayer William Little appeals from the Tax Court's decision imposing additions to tax for negligence, pursuant to 26 U.S.C. § 6653(a), and additions to tax for substantial understatement of tax, pursuant to 26 U.S.C. § 6661, for the tax years 1984, 1985, and 1986. The Commissioner determined that Taxpayer was not entitled to capital gain treatment on his real estate sales, because the properties sold were "dealer property,"

---

1. Honorable Robert E. Coyle, Senior United States District Judge for the Eastern District of California, sitting by designation.

held primarily for sale to customers in the ordinary course of his business. The Tax Court agreed with the Commissioner and sustained the deficiencies and additions to tax. On appeal Taxpayer has abandoned his claim to capital gain treatment, and challenges only the additions to tax. This Court affirms the Tax Court for the reasons stated herein.

## FACTS AND PROCEDURAL HISTORY

In 1972, Taxpayer began buying real estate extensively, primarily at foreclosure sales. Many of the properties purchased were rented for several years before being sold. Of the properties rented, most were rented on a monthly basis, and Taxpayer retained the right to terminate the lease after giving 30 days notice. This enabled him to sell the properties at optimal times. During the tax years at issue, 1984 through 1986, Taxpayer employed approximately 30 or 40 people in his real estate business. Taxpayer relied on a number of brokers, agents, and escrow companies to execute the sale of his real properties. Taxpayer was closely involved with all aspects of his real estate business, including purchase, rental and sales activities.

From 1979 through 1986, Taxpayer's real estate transactions were continuous and substantial. Although the Taxpayer sold fewer than 20 properties in each of the years 1979 through 1982, he sold 68 properties in each of the years 1983 and 1984, he sold 104 properties in 1985, and he sold 149 properties in 1986. After 1982, the properties that Taxpayer intended to sell before expiration of the long-term capital gains holding period were purchased and sold by his wholly owned subchapter S corporation, 2974 Properties, Inc. ("the corporation"), and the properties the Taxpayer intended to hold for the long-term capital gains holding period (which would be eligible for the capital gains deduction [2] if they were capital assets) were purchased and sold by him as an individual. The corporation averaged 50 to 75 real estate sales each year during the three year period

from 1984 through 1986. The corporation did not claim capital gain treatment on its sales. Taxpayer claimed capital gain treatment on most of his sales. The real estate activities and finances of Taxpayer and of his corporation were virtually indistinguishable.

In order to maximize his capital gains deduction before its repeal under the Tax Reform Act of 1986, on December 30, 1986, Taxpayer transferred 31 of his properties to various real estate agents with whom he regularly did business. Taxpayer signed a grant nominally transferring the property into the transferee's name, and then had the transferee execute a deed of trust and a promissory note in favor of the Taxpayer for the amount of his equity in the property transferred. He then had the trust and grant deeds recorded. The transactions involved no money, and the transferees did not consider themselves to be the owners of the transferred properties. They participated only to help the Taxpayer obtain capital gains deductions.

Taxpayer received rental income of approximately $7,536,000 for the three years. This consisted of $2,600,000 in each of 1984 and 1985 and $2,336,000 in 1986. After deducting expenses and depreciation, Taxpayer claimed rental losses totaling $3,091,645 for the three years: including losses of $609,000 in 1984, $976,780 in 1985, and $1,505,865 in 1986. Proceeds from Taxpayer's real estate sales during the same three year period exceeded $17,500,000.

In March 1987, Taxpayer employed John Ko as an accountant. Mr. Ko observed that the Taxpayers records were in disorder and that the Taxpayer lacked competent employees. Mr. Ko was immediately required to prepare Taxpayer's individual federal income tax returns for 1977 through 1979, which were delinquent. He was also required to prepare Taxpayer's individual return for 1986. Although the 1986 return was filed on time, Mr. Ko lacked adequate time to prepare it properly. Therefore, Mr. Ko attached a disclaimer, entitled "Status of Tax Return Filed," which stated:

---

**2.** Under former I.R.C. § 1202, an individual could deduct 60% of the gain on the sale of a

capital asset held for more than one year.

This return has been prepared on the basis of available information at this time. While the Taxpayer believed that the liability stated hereon is correct, it may be necessary to submit a Form 1040–X within the period of one year to clarify certain items. It is not expected that the liability on said Form 1040–X will be less than shown hereon.

In addition, Mr. Ko was required to file returns for Taxpayer's corporation for its 1984, 1985, and 1986 tax years.

Upon audit, the Commissioner determined that pursuant to I.R.C. § 1221(1), Taxpayer was not entitled to capital gain treatment on his real estate sales because he sold the properties as a real estate dealer. The Commissioner also determined that Taxpayer was liable for: (1) additions to tax for negligence under I.R.C. § 6653(a) for all three years, because the understatements in tax resulting from the improperly claimed capital gain treatment was due to Taxpayer's negligence or disregard of rules and regulations; (2) additions to tax for substantial understatement of tax liability under I.R.C. § 6661 for all three years; and (3) an addition to tax for late filing under I.R.C. § 6651 for 1985. Accordingly, the Commissioner issued a notice of deficiency to Taxpayer and Taxpayer timely petitioned the Tax Court for relief.

In the Tax Court, the Taxpayer argued that the length of the holding period was the decisive factor in distinguishing property held by a dealer for sale to customers in the ordinary course of business from property held for investment. He maintained that his corporation was the real estate "dealer," handling the short term holdings, and that he individually handled only the "investment" properties, i.e., only the longer-term holdings. In view of the disallowance of the claimed capital gains deductions, Taxpayer sought to avoid taxation altogether on the sham transfers reported in 1986 which attempted to beat the repeal of favorable capital gains treatment. Taxpayer argued that he should be relieved from the negligence penalty on the ground that his claimed capital gain treatment was not due to negligence, but resulted from a good faith dispute over a complex issue. Taxpayer also argued that he

should be relieved from the penalty for substantial understatement of tax liability on the grounds that he had substantial authority to support the claimed long-term capital gain tax treatment and that he adequately disclosed the issue and facts by reporting the transactions on the returns.

In its opinion, the Tax Court noted that when dispositions of property extend over a long period of time and are especially numerous, the likelihood of capital gain is very slight. Conversely, the Taxpayer's capital gain treatment is afforded greater credence when sales are few and isolated. The court found that, here, the continuous and substantial purchases and sales of properties by Taxpayer established that they were executed in the ordinary course of his business as a real estate dealer. The court found that Taxpayer's active involvement in all aspects of the real estate business further supported the conclusion that the properties were held for sale to customers in the ordinary course of business.

The Tax Court rejected Taxpayer's contention that his corporation was the real estate dealer, and that he, individually, was the real estate investor. The Tax Court determined that the holding period alone is not dispositive. In light of the other factors in this case, the Tax Court rejected Taxpayer's argument that he held properties as an individual for investment. Rather, the court concluded that the "primary purpose" for which they were held was for sale to customers, because the proceeds from the sales far outweighed any rental proceeds. The court ruled that Taxpayer engaged in the business of buying and selling real estate, held the property primarily for sale to customers, and the sales of property occurred in the ordinary course of petitioner's business.

The court rejected Taxpayer's attempt to have the IRS disregard the bogus 1986 transfers, so that Taxpayer could pay tax on the gains in subsequent years when the properties were actually sold. The court held that where, as here, the Taxpayer has clearly attempted to deceive the government by claiming bogus transactions, he cannot simply concede deceit and avoid the transaction

if it proves to be disadvantageous from a tax perspective.

The court sustained the negligence penalty. The court rejected Taxpayer's contention that the understatements were due to an honest difference of opinion regarding a complex issue. The court found, instead, that his claim of capital gains deductions on the sales was unreasonable in light of the fact that he had been in the real estate business for several years and obtained most of his income from real estate sales. The court found that Taxpayer's poor record keeping practices and failure to file his 1985 return on time were consistent with negligence.

Finally, the court sustained the addition to tax for substantial underpayment of tax liability. The court found that Taxpayer failed to supply substantial authority for his claim of capital gains deductions on the sales. The court also found that Taxpayer failed to provide adequate disclosure on the return or in attachments thereto of the true nature of his real estate transactions or of the nature of the controversy over its classification as capital gains versus ordinary income.

## STANDARD OF REVIEW

■■■ The Tax Court's finding that an understatement of tax liability was due to negligence under I.R.C. § 6653 is reviewable under the clearly erroneous standard. *Allen v. Commissioner,* 925 F.2d 348, 353 (9th Cir. 1991); *Collins v. Commissioner,* 857 F.2d 1383, 1386 (9th Cir.1988); and *Hansen v. Commissioner,* 820 F.2d 1464, 1469 (9th Cir. 1987). The Tax Court's factual findings with respect to the applicability of I.R.C. § 6661 penalty for substantial understatement of tax liability are reviewable under the clearly erroneous standard. *Norgaard v. Commissioner,* 939 F.2d 874, 877–78 (9th Cir.1991). The Ninth Circuit has held that whether substantial authority supported the Taxpayer's treatment of an item is a question of law, reviewable *de novo.* Id. The Tax Court's exclusion of evidence is reviewable for abuse of discretion. *Hudspeth v. Commissioner,* 914 F.2d 1207, 1213 (9th Cir.1990); *Kalgaard v. Commissioner,* 764 F.2d 1322, 1323 (9th

Cir.1985). The constitutionality of the additions to tax imposed under I.R.C. § 6653 and 6661 is a question of law, reviewable *de novo. Licari v. Commissioner,* 946 F.2d 690, 692 (9th Cir.), *aff'd,* 946 F.2d 898 (9th Cir.1991).

## DISCUSSION

I. *The Tax Court did not commit clear error when it sustained the additions to tax for negligence under I.R.C. § 6653.*

Taxpayer asserts that the Tax Court committed clear error when it determined that Taxpayer was liable for the negligence penalty essentially on two grounds: the breach of the duty to file a timely tax return; and the Tax Court's conclusion that the real estate dealer ordinary income/capital gains issue was neither complex nor subject to an honest difference of opinion.

Capital gains treatment is available only with respect to capital assets, and in some circumstances, depreciable or real property used in the trade or business. It is not available, however, with respect to property held by a taxpayer primarily for sale to customers in the ordinary course of his trade or business. The facts of this case clearly establish that the properties in question were held by Taxpayer for sale to customers in the ordinary course of that business. Accordingly, Taxpayer had no reasonable basis for claiming the capital gains deduction. Since Taxpayer failed to carry his burden of proving that the understatements in tax were not due to negligence or disregard of the applicable rules and regulations, the Tax Court correctly sustained the § 6653(a) penalty.

■■■ Where any part of an underpayment in tax is due to negligence or disregard of rules and regulations, former I.R.C. § 6653(a) imposes an addition to tax in the amount of 5 percent of the amount of the underpayment plus 50 percent of the underpayment attributable to negligence.[3] Additions to tax for negligence under § 6653 are presumptively correct, and the Taxpayer bears the burden of proving that the underpayment was not due to his negligence or

---

**3.** The addition to tax for negligence now appears in I.R.C. § 6662.

intentional disregard of the rules and regulations. *Howard v. Commissioner,* 931 F.2d 578, 582 (9th Cir.1991). Negligence is defined as the lack of due care or failure to do what a reasonable and ordinary prudent person would do under the circumstances. *Allen v. Commissioner,* 925 F.2d 348, 353 (9th Cir.1991); *Zmuda v. Commissioner,* 731 F.2d 1417, 1422 (9th Cir.1984).

For the years in issue, former I.R.C. § 1202 generally allowed an individual a deduction equal to 60% of the amount of his net capital gain, which is defined by I.R.C. § 1222(11) as the excess of a taxpayer's net "long term capital gain" for the taxable year over the net "short term capital loss" for the same year. "Long term capital gain" is defined as gain from the sale or exchange of a capital asset held for more than one year, or more than six months in the case of property acquired after June 22, 1984, and before January 1, 1988. I.R.C. § 1222. I.R.C. § 1231, in general, allows capital gain treatment on the sale of real property used in a trade or business. But I.R.C. § 1222(1) excludes from the definition of "capital asset," and I.R.C. § 1231(b)(1)(B) excludes from the definition of "property used in the trade or business," property held by a taxpayer "primarily for sale to customers in the ordinary course of his trade or business."

Taxpayer asserts that the Tax Court erred in concluding that the main issue in the case was neither complex nor subject to an honest difference of opinion. Taxpayer points out the proper treatment of a sale of real property as ordinary income versus capital gain is a factually intensive question which must be analyzed on a case by case basis. *Redwood Empire Savings & Loan Ass'n v. Commissioner,* 628 F.2d 516, 517 (9th Cir.1980). Taxpayer maintains there is a good faith difference of opinion between him and the IRS which does not support the imposition of the negligence penalty. Taxpayer argues that the Tax Court's implicit reliance on *Norris v. Commissioner,* T.C. Memo 1986–151, T.C.M. (CCH) 852, 1986 WL 21864 (1986), for imposing the addition to tax, was erroneous because the facts in *Norris* are distinguishable from his situation. Taxpayer argues that in *Norris,* (1) the acquisitions were of

unimproved land; (2) the rental income from the few improved properties was minimal; (3) the average holding period per property was 2.75 years; (4) there was extensive personal sales activity; and (5) there was no evidence that Norris was holding real property for appreciation.

■ Taxpayer's argument is deficient in that it fails to offer any facts to support a belief that he was entitled to capital gains treatment. While Taxpayer asserts that he had substantial rental income, the rental revenue is a merely a fraction of the sales proceeds he generated during the period in question. Moreover, the rental expenses far outweighed the revenue, generating losses in all years concerned. Taxpayer also employed directly and indirectly a large number of individuals to facilitate the sale of numerous properties. As the Tax Court found, the facts surrounding Taxpayer's real estate business belie any good faith belief that the 321 properties sold during the years in issue were not at the time held for sale to customers in the ordinary course of his business. Rather, Taxpayer's determination of whether a particular sale would be treated for tax purposes as by him individually or by his corporation was driven entirely by whether the properties had been held for the requisite long-term capital gains holding period, and nothing else. As the Tax Court noted, Taxpayer's testimony that he made a good faith attempt to segregate the dealer sales from the investment sales by funneling the "quick turnaround" properties (those that would not be held long enough for the capital gains holding period) through his corporation, to be self-serving and not credible. The credibility of testimony is a matter peculiarly within the province of the Tax Court as the trier of fact. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The bogus transfers Taxpayer made to take advantage of the capital gains deduction shortly before its repeal are further evidence that Taxpayer was not proceeding under a good faith interpretation of the rule. It is plain that the understatements in tax were due to Taxpayer's questionable tax preparation practices, not to an honest difference of opinion. Accordingly, this Court finds that the holding of the Tax

Court was not clearly erroneous and affirms the negligence penalty.

## II. *The Tax Court did not commit clear error imposing the addition to tax for substantial understatement under § 6661.*

Taxpayer argues that the addition to tax for substantial understatement should not be applied to him for two reasons: he had "substantial authority" for the position taken on his return; and he adequately disclosed his position on his return. *See* 26 U.S.C. § 6661(b)(2)(B).

Here, the Commissioner imposed the addition to tax for substantial understatement of tax liabilities because Taxpayer's returns contained an understatement exceeding the greater of $5,000 or 10 percent of the tax required to be shown on the return for the year in question, pursuant to I.R.C. § 6661(a).

The Internal Revenue Code provides: "If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement." I.R.C. § 6661(a). In this case, there is no dispute that the deficiencies in tax were "substantial understatements" of tax as defined by § 6661(b). The statute provides that the amount of an understatement shall be reduced by the portion of the understatement which is attributable either, 1) to tax treatment that was supported by "substantial authority," or 2) to tax treatment about which the relevant facts were "adequately disclosed in the return or in a statement attached to the return." I.R.C. § 6661(b)(2)(B). Furthermore, the Commissioner may waive any such penalty on a showing by the taxpayer that there was a reasonable cause for the understatement and that the taxpayer acted in good faith. I.R.C. § 6661(c).

Congress enacted § 6661(a) in 1982 in order to impose a financial risk on taxpayers who play the "audit lottery." *Licari v. Commissioner,* 946 F.2d 690, 692 (9th Cir.1991). The Senate Report noted that prior to enactment of § 6661 taxpayers were not exposed to any downside risk in taking positions that,

even if not negligent or fraudulent, were highly questionable. S.Rep. No. 494 (Vol.1), 97th Cong., 2nd Sess., 272–73 (1982). Thus, if the questionable position went undetected, a taxpayer achieved absolute reduction in tax without cost or risk; if it was detected, a taxpayer paid only the tax that should have been paid in the first instance, plus normal interest to reflect the cost of "borrowing" from the government. *Licari,* 946 F.2d at 693 n. 4.

### A. *The Taxpayer's position was not supported by substantial authority.*

■ A position is supported by substantial authority only if the weight of the authorities supporting the treatment is substantial in relation to the authorities supporting contrary positions. 26 C.F.R. § 1.6661–3(b)(1). A position that is arguable, but fairly unlikely to prevail in court, does not satisfy the substantial authority standard. 26 C.F.R. § 1.6661–3(a)(2). An authority that is materially distinguishable on its facts carries very little weight. *Norgaard v. Commissioner,* 939 F.2d 874, 880–81 (9th Cir.1991).

As substantial authority, Taxpayer relies on *Austin v. Commissioner,* 263 F.2d 460 (9th Cir.1959), wherein the Ninth Circuit held that a taxpayer actively pursuing his career as an attorney and whose secondary real estate activities consisted of little more than holding the properties until they were sold to purchasers who had initiated the transactions, was an investor, rather than a dealer, and therefore was entitled to capital gains treatment on his real estate sales. However, *Austin* is distinguishable on its facts. In fact, this Court has declared that *Austin* is irrelevant in cases like Taxpayer's wherein the taxpayer clearly is primarily, actively, and extensively engaged in the business of selling real estate. *Wineberg v. Commissioner,* 326 F.2d 157, 163 (9th Cir.1963). In *Wineberg,* this Court observed that Austin was not engaged in the real estate business, and the real estate sold thus was not held for sale to customers in the ordinary course of such a business. *Id.* On the other hand, this Court found that Wineberg was unquestionably engaged in the real estate business

individually and under the name of Wineberg Timber Company. Thus, Wineberg held timber and land for sale to customers in the ordinary course of business and capital gain treatment was denied. Comparing these cases to the case at bar, the Tax Court found that Taxpayer's business was real estate, that he was actively and extensively engaged in the business, and the property sold had been held for sale to customers in the ordinary course of that business. Taxpayer's real estate activities are clearly different for those in *Austin* because they are much more active and not secondary in nature. Therefore, *Austin* is distinguishable on the facts, rendering Taxpayer's authority irrelevant. *Norgaard*, 939 F.2d at 880–81. Accordingly, the tax court did not err in finding that the Taxpayers position was not supported by substantial authority.

B. *The Taxpayer did not adequately disclose the nature of the controversy concerning capital gains versus ordinary income treatment of his real estate transactions.*

 The Taxpayer argues that the Tax Court failed to consider other disclosures he made on the returns. The Taxpayer argues that the sales were evidenced by Forms 4797 attached to each year's returns. Form 4797 is entitled "Gain and Losses from Sales or Exchanges of Assets Used in a Trade or Business and Involuntary Conversions." The Taxpayer states that the total gains reported on those forms were carried over to the respective Schedule D, Part III, under the category of long term capital gain. Taxpayer argues that this clearly states the fact that the Taxpayer was claiming capital gains treatment on all these sales. Taxpayer points out that each sale referred to in the returns is separately listed. Therefore, the returns disclose the total number of sales and the total dollar amounts of those sales in each year. App.Br. at 12.

Treasury Regulation 1.6661–4(b)(1)(iv) expressly states that the disclosure must show: "The facts affecting the tax treatment of the item (or group of similar items) that reasonably may be expected to apprise the Internal Revenue Service of the nature of the poten-

tial controversy concerning the tax treatment of the item (or items)." 26 C.F.R. § 1.6661–4(b)(1)(iv). *See Schirmer v. Commissioner,* 89 T.C. 277, 285–86, 1987 WL 43886 (1987); *Accardo v. Commissioner,* 942 F.2d 444, 453 (7th Cir.1991), *cert. denied,* 503 U.S. 907, 112 S.Ct. 1266, 117 L.Ed.2d 494 (1992) (holding that to satisfy the disclosure requirement, the tax return must at least provide sufficient information to enable the Commissioner to identify the potential controversy involved). The problem with Taxpayer's return is that it did not contain information to adequately disclose the true nature of the sales proceeds as ordinary income, nor did the disclosures supply the critical facts underlying the nature of the Taxpayer's real estate business.

In *Reinke v. Commissioner,* 46 F.3d 760 (8th Cir.1995), the Eighth Circuit held that a taxpayers mere reporting of amounts received as capital gains on the tax forms did not adequately disclose their true nature as ordinary income, and did not supply the facts necessary to resolve the issue. *Id.* at 765. In *Reinke,* the controversy involved whether payments received in connection with certain coal mining leases should receive capital gains or ordinary income treatment. The Eighth Circuit found that the record did not show what portion of the payments were received for damages to the land, a factor in determining capital gains treatment. *Id.* at 764. The tax returns gave no information about the nature of the payments received or the nature of the coal lease agreements. Instead, the taxpayers merely stated the amounts received and how they characterized them, i.e., as "capital gains" or "rents" or "royalties." The Eighth Circuit concluded that such information on the returns "did not disclose to the Commissioner the possible issue whether those amounts constituted capital gains or ordinary income, or provide the facts relevant to such a determination." *Id.* at 765 (citing *Schirmer,* 89 T.C. at 286).

The disclosures made by Taxpayer in the case at bar are nearly identical to those found insufficient by the Eighth Circuit held were not sufficient. As in *Reinke,* Taxpayer has indicated the number and dollar amounts of his transactions. He has also indicated on the return his conclusion that the transactions qualify for capital gains treatment, and

characterized the transactions in that way on the forms submitted. However, Taxpayer's disclosures in the returns do not indicate the potential controversy regarding the capital gains treatment of the transactions. Moreover, the disclaimer he attached to his 1986 return said nothing about the potential controversy over the capital gains treatment. In sum, nothing in Taxpayer's returns would alert the Internal Revenue Service to the significant possibility that a capital gains versus ordinary income dispute was implicated. Accordingly, this Court concludes that the petitioner did not adequately disclose the potential controversy relating to the real estate transactions on his 1984, 1985, and 1986 returns. *See also, Mauerman v. Commissioner,* T.C. Memo 1993–23, 1993 WL 7561 (1993) (holding that unexplained deductions for "commissions," "interest on business indebtedness," "legal and professional services," "general administrative," etc. would not alert the Respondent to the significant possibility that a capital-expenditure versus current-expense dispute was implicated). Therefore, this Court affirms the Tax Court on the issue of imposing penalties for substantial understatement of tax.

### C. Taxpayer did not act in good faith.

■■■ Although I.R.C. § 6661(c) provides that the Commissioner may waive any penalty on a showing by the taxpayer that there was a reasonable cause for the understatement and that the taxpayer acted in good faith, this provision is inapplicable here. As discussed above, the bogus transactions initiated just before repeal of the capital gains deduction, which Taxpayer later attempted to disavow, belie any notion that Taxpayer was acting under a good faith belief in his position.[4]

### III. The Tax Court did not abuse its discretion in excluding evidence of a settlement reached respecting tax years not at issue in this case.

■■■ Taxpayer asserts that the Tax Court abused its discretion in refusing to admit into evidence a settlement agreement between Taxpayer and the IRS allowing capital gains tax treatment of real estate transactions reported in returns for tax years 1979 through 1981. The Tax Court ruled that the evidence was not relevant. Taxpayer argues that he has been prejudiced in the following way. "For purposes of negligence the manner in which the dealer issue was raised in the earlier docketed case and conceded by the government goes to the question of an honest difference of opinion, and as to the understatement penalty it substantiates appellant's position that the returns made adequate disclosure." Opening Brief at 15.

It is well settled that the Commissioner's failure to challenge a taxpayer's treatment of an item in one taxable year is irrelevant in the determination of the proper treatment of a similar item in a different taxable year. *See Yeaman v. United States,* 584 F.2d 322, 326 (9th Cir.1978). In *Yeaman,* the taxpayers reported income derived form oil and gas leases in 1970 and 1971 as long term capital gain, but the Commissioner determined that the amount should have been reported as ordinary income. *Id.* at 323. The Commissioner, however, had previously audited and accepted taxpayers' capital gain treatment in prior years. *Id.* at 323, 326. This Court rejected Yeaman's attempt to impute evidentiary significance to the Commissioner's prior inaction, holding "[t]he prior IRS inaction has no bearing on the issue herein ... [W]e hold that the trial court did not err in finding such evidence irrelevant and inadmissible." *Id.* at 326. *See also Chism's Estate v. Commissioner,* 322 F.2d 956, 961 (9th Cir.1963).

Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. *Commissioner v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719–20, 92 L.Ed. 898 (1948). In the case at bar, the Commissioner's failure to deny Taxpayer capital gains treatment for the tax

---

4. We conclude in Part III below that evidence regarding a prior settlement is not relevant for purposes of determining liability for the taxable years at issue in this case. We need not decide whether such evidence would be admissible for purposes of good faith because even *if it were,* any failure to admit it would be harmless given the volume of the evidence establishing the absence of good faith.

years 1979, 1980 and 1981, for whatever reason, is irrelevant for purposes of tax years 1984, 1985, and 1986 at issue in this case.

IV. *The additions to tax for negligence and for substantial understatement of tax liability imposed against Taxpayer do not violate the excessive fines clause of the Eighth Amendment.*

██ Taxpayer attempts to raise for the first time on appeal the issue of whether the penalties in question violate the excessive fines clause of the Eighth Amendment. Taxpayer invokes the exception to the general rule that an issue not presented to the trial court cannot be raised for the first time on appeal on the grounds that a change of law presents a new theory to his case. *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). Taxpayer argues that the Supreme Court decision in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) is the basis for his Eighth Amendment argument. Taxpayer explains that he did not have a chance to raise the *Austin* issue at trial before the Tax Court since it had not been decided until the day before the Tax Court filed its opinion. The Supreme Court filed its opinion in *Austin* on June 28, 1993. The Tax Court filed its Memorandum Opinion on June 29, 1993. Consequently, the Court allows the Taxpayer to raise this Eighth Amendment issue.

However, the additions to tax for negligence and for substantial understatement of tax do not violate the excessive fines clause of the Eighth Amendment. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment limits the government's power to punish. *Austin v. United States*, 509 U.S. at 608–10, 113 S.Ct. at 2805.

*Austin* was a forfeiture case. Austin was indicted and subsequently pleaded guilty in a South Dakota state court to one count of possessing cocaine and was sentenced to seven years imprisonment. Shortly after he pled guilty the United States filed a forfeiture action under 21 U.S.C. § 881(a)(4) and (a)(7) seeking forfeiture of Austin's mobile home and auto body shop. *Austin*, 509 U.S. at 602–06, 113 S.Ct. at 2803. The Court found that the Excessive Fines Clause of the Eighth Amendment was not limited to criminal actions. It phrased the issue as follows: "the question is not, as the United States would have it, whether forfeiture under 21 U.S.C. § 881(a)(4) and (a)(7) is civil or criminal, but rather whether it is punishment." *Id.* at 610, 113 S.Ct. at 2806. *Austin* held that the excessive fines clause can apply to a forfeiture if the forfeiture constitutes punishment. *Austin*, 509 U.S. at 608–10, 113 S.Ct. at 2805. A forfeiture does not constitute "punishment" to the extent that it is remedial, such as where the amount of forfeiture is rationally related to the costs of enforcing the law and societal costs of the proscribed conduct, or where the forfeiture has the salutary effect of removing noxious contraband from society. *Id.* at 619–23, 113 S.Ct. at 2811–12.

Taxpayer argues that under *Austin*, the I.R.S.' power to extract cash payments in the form of civil tax penalties is limited by the excessive fines clause as long as they were imposed as "punishment." *Austin*, 509 U.S. at 610–12, 621–23, 113 S.Ct. at 2806, 2812. Taxpayer concludes that the civil tax penalties imposed against him were not solely remedial, as required by *Austin*. Instead, he argues that the statute for each of the penalties was enacted to serve the goal of deterrence, and therefore constitute punishment.

██ Taxpayer offers no compelling reason for extending the holding of *Austin* to his situation. The additions to tax at issue in the present case are purely revenue raising because they serve only to deter noncompliance with the tax laws by imposing a financial risk on those who fail to do so. *Licari v. Commissioner*, 946 F.2d at 692; *Karpa v. Commissioner*, 909 F.2d 784, 786 (4th Cir. 1990). Moreover, in rejecting a contention that a 50% addition to tax was not a tax but a criminal penalty, the Supreme Court held that the 50% addition was remedial:

> The remedial character of sanctions imposing additions to a tax has been made clear

by this Court in passing upon similar legislation. They are provided primarily as a safeguard of the protection of the revenue and to reimburse the government for the heavy expense of investigation and the loss resulting from the Taxpayer's fraud.

*Helvering v. Mitchell,* 303 U.S. 391, 401, 58 S.Ct. 630, 634, 82 L.Ed. 917 (1938). In the case at bar, Taxpayer has failed to establish that the additions to tax in question here are penal sanctions unrelated to the government's fundamental interest in raising revenue. Therefore, the Court holds that the additions to tax challenged by Taxpayer are not violative of the Excessive Fines Clause.[5]

ACCORDINGLY, the decision of the Tax Court is AFFIRMED.

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

I concur in all of Judge Coyle's excellent opinion except for Section IIB. As to that part, I dissent because I believe the I.R.S. is guilty of improper piling on with respect to the penalties it imposed on Little.

I believe that Little satisfied the requirement that permits taxpayers to avoid an addition to tax penalty. To satisfy that requirement, "the tax return must at least provide sufficient information to enable the Commissioner to identify the controversy involved." *Reinke v. C.I.R.,* 46 F.3d 760, 765 (8th Cir.1995). The cases cited by the majority are not persuasive. Unlike in Little's case, an examination of the return filed by the taxpayer in *Reinke* would in no way have suggested to the I.R.S. that there was a possible controversy. By listing on the return under "capital gains" figures that included both ordinary income for damage to land and capital gains, Reinke did not in any way alert the I.R.S. to the possibility of a controversy. Similarly, in *Accardo v. C.I.R.,* 942 F.2d 444 (7th Cir.1991), the taxpayer was relying on a "novel theory" for deducting legal fees and there was nothing on the face of the return that would have alerted the

I.R.S. to a possible problem with the deduction. *See also Schirmer v. C.I.R.,* 89 T.C. 277, 285, 1987 WL 43886 (1987) (holding taxpayers liable for addition to tax when there was no indication on the return that the farm in question was not being used for business as taxpayers claimed); *Mauerman v. C.I.R.,* T.C. Memo 1993–23, 1993 WL 7561 (1993) ("Nothing in the record suggests that unexplained deductions ... would alert respondent to the significant possibility [of a potential] dispute."). In this case Little disclosed on his returns that he was claiming capital gains tax for the sale of approximately two-hundred houses in a three-year period. This should have alerted—and undoubtedly did alert—the I.R.S. to the fact that Little might be claiming capital gains improperly. The sheer volume of transactions indicated that in all likelihood he was selling homes professionally, and thus was receiving ordinary income. The government itself argues that the large number of transactions indicates that they are not appropriate for capital gains treatment.

In short, I do not think that there can be any doubt that Little disclosed the information necessary to avoid the addition to tax penalty. While the majority seems to be saying that Little should not only have disclosed the relevant facts, but should also have stated on the face of the return that there might be a problem with the way he treated the transactions, that is not what the Internal Revenue Code or the case law provides. In order to avoid the addition to tax penalty, the Code requires that the taxpayer adequately disclose facts within "the return or in a statement attached to the return." 26 U.S.C.A. § 6661(b)(2)(B) (West 1989). The information must be enough "to enable *the Commissioner* to identify the controversy involved." *Reinke,* 46 F.3d at 765 (emphasis added). The taxpayer need not add, "Hey guys, there's a problem." Because Little adequately disclosed the relevant facts on the face of the return, facts that were sufficient to allow the Commissioner to identify the

---

5. Although there is no Ninth Circuit authority directly on point, the First Circuit specifically rejected an argument under *Austin* similar to Taxpayer's. The First Circuit held that the imposition of deficiencies and additions to tax does

not violate the proscription against excessive fines of the Eighth Amendment. *McNichols v. Commissioner,* 13 F.3d 432, 434–35 (1st Cir. 1993), *cert. denied,* 512 U.S. 2705, 114 S.Ct. 2705, 129 L.Ed.2d 833 (1994).

capital gains controversy, he should not have been assessed the addition to tax penalty. Accordingly, I dissent in part.